NATIONAL CLAY PRODUCTS COMPANY et al., Petitioners, v. DISTRICT COURT OF CERRO GORDO COUNTY et al., Respondents.

No. 41373.

June 24, 1932.

Bloodgood, Kemper, Lamb & Passmore, and Breese & Cornwell, for petitioners National Clay Products Company, F. E. Keeler, and G. O. Gould.

Smith & Feeney, for petitioner Mason City Brick and Tile Company.

F. A. Ontjes and E. G. Dunn, for respondents.

MORLING, J.—The National Clay Works was a corporation organized under the laws of Maine, doing business at Mason City, Iowa. It is alleged on both sides that the National Clay Works has been dissolved. About June 24, 1926, defendant National Clay Products Company, a Delaware corporation, succeeded to the National Clay Works. The process by which the dissolution and succession were effected, the time of dissolution, and the results thereof are in dispute.

On August 27, 1930, a petition in equity was filed, and about September 1, 1931, an amended petition at law by Albert F. Tretten and a large number of others against National Clay Products Company, F. E. Keeler and G. O. Gould, who are now the only parties defendant to the action. The amended petition may be summarized as alleging that on June 24, 1926, plaintiffs were minority stockholders of the National Clay Works; that a number of companies named, including the Mason City Brick and Tile Company and the National Clay Works operating brick and tile factories at Mason City were owned and controlled by F. E. Keeler, Mrs. F. E. Keeler and B. C. Keeler, who conspired to acquire control of the industry at Mason City and in adjoining territory; that to accomplish this purpose they employed T. A. Potter and G. O. Gould to conduct a campaign for the secret acquisition of the stock of the National Clay Works; that thus a majority of the stock was acquired by F. E. Keeler, Mrs. F. E. Keeler, B. C. Keeler and the corporations which they owned

and controlled; that these alleged conspirators caused the election of their nominees as members of the board of directors of the National Clay Works, caused the by-laws to be amended, and with G. O. Gould, William E. Lamb, Garfield E. Breese and T. A. Potter entered into a plan to acquire the assets of the National Clay Works without consideration and to freeze out the minority stockholders; that pursuant to this plan the parties to it held a purported special stockholders' meeting whereby for the purpose alleged they abrogated the corporate contractual rights of stockholders; that they made an ultra vires purported amendment to the articles of incorporation and organized the National Clay Products Company, a Delaware corporation, for the purpose of taking over the assets of the National Clay Works, pursuant to which the parties to the scheme transferred all the assets of the National Clay Works to F. E. Keeler and to the National Clay Products Company for no consideration, or for a consideration so greatly inadequate as to be fraudulent as to the minority stockholders; that the National Clay Products Company came into apparent existence as a fiction to be used as an instrumentality to acquire for F. E. Keeler the assets of the National Clay Works without consideration, and that the parties to the plan have used such assets for F. E. Keeler's gain, and that the profits belong to the National Clay Works or to its stockholders and are held in trust for them; that the transfer was in violation of the preferential and contractual rights of the preferred stockholders; that all of the outstanding stock of the National Clay Products Company is in the name of F. E. Keeler or his representatives, and no consideration has been paid the minority stockholders of the National Clay Works for their interest; that F. E. Keeler and the National Clay Products Company have appropriated all the assets of the National Clay Works to the damage of the minority stockholders "in an amount equal to the value of their aliquot part of said property, to wit, the sum of $300,000, and that the assets of the National Clay Works are held by the parties of said scheme and the National Clay Products Company in trust for the National Clay Works or for the plaintiffs and other minority stockholders and that the complainants and minority stockholders are entitled to an accounting of the defendant F. E. Keeler and National Clay Products Company jointly." The amended petition alleges that no sufficient notice of the meeting

of the National Clay Works was given; "that as a part of said plan and scheme the parties of such plan and scheme and the majority stockholders have dissolved the National Clay Works." Plaintiffs pray "that a joint accounting be had of the defendants, F. E. Keeler and the National Clay Products Company, and that these plaintiffs and all other stockholders similarly situated be awarded a judgment against the defendant, F. E. Keeler, and the defendant, National Clay Products Company, jointly for the value of their aliquot parts of the property and assets of the National Clay Works * * * in the sum of $300,000 and that they be awarded a first lien on all the properties and assets and income thereof transferred and appropriated as aforesaid."

The plaintiffs in the amended action will be denominated here as plaintiffs, and the National Clay Products Company, F. E. Keeler and G. O. Gould as defendants. Defendants answered denying generally the allegations of the petition except as admitted, modified or explained. Defendants set up the statutes of the state of Maine and proceedings in the Supreme Judicial Court of that state dissolving the National Clay Works and through a receivership transferring its assets to the National Clay Products Company. Defendants allege depression in the industry and in the business of the National Clay Works and deny that the assets of the National Clay Works were worth more than its obligations. They allege full knowledge on the part of minority stockholders and opportunity to purchase stock; deny ownership by the other corporations of any stock in National Clay Works; and tender back to the persons who were the stockholders of the National Clay Works all remaining property transferred by it to the National Clay Products Company on payment of obligations, expenditures, etc., with the purpose of placing the stockholders of the National Clay Works substantially *in statu quo.*

Plaintiffs filed motion to strike from the answer, which does not appear to have been ruled upon. Plaintiffs filed a petition for production of books and papers, naming (besides defendants) in the caption to it Mason City Brick and Tile Company, which filed resistance, and naming in the caption other corporations and F. E. Keeler, president, director and officer of them, and F. E. Keeler as executor of Estate of B. C. Keeler, none of whom

are shown to have been served with notice or to have been made parties to the action or to have appeared. The petition for production alleges "that books, papers and writings of defendants hereinafter particularly mentioned are in the possession and under the control of the defendants, and contain evidence material to the issues", etc., and is verified. It asks production of "(a) The Stock Record Book or Stock Registers of the Mason City Brick and Tile Co. * * * Dennison Brick & Tile Co. * * * Dennison Sewer Pipe Co. * * * Mason City Clay Works * * * American Brick & Tile Co. * * * North Iowa Brick & Tile Co., showing all the preferred and common stock of said companies issued and outstanding between the first day of January, 1915, and the first day of July, 1926. * * * (b) The general ledgers, and the journals of the individual books of F. E. Keeler, Mrs. F. E. Keeler, and B. C. Keeler, and the general ledgers of Mason City Brick & Tile Co., Dennison Brick & Tile Co., Dennison Sewer Pipe Co., of the American Brick & Tile Co., of the Mason City Clay Works, and of the North Iowa Brick & Tile Co., showing all sums paid * * * as the purchase price of stock of the National Clay Works owned by said parties or either of them or by said companies on the 24th day of June, 1926, and showing the date of the acquisition of such stock of the National Clay Works, and the amounts paid therefor, and all checks of such parties, and of said companies issued in payment of stock of National Clay Works. * * * (c) The Inventory Books * * * (d) The books * * * showing fiscal inventory of merchandise * * * (e) The fuel books * * * (f) The insurance books * * * (g) Customers Ledger * * * (h) The letters and correspondence * * * (i) Common stock certificate books * * * (j) The certificate books * * *" of the National Clay Works. "(K) The stock certificate books and stock ledger. * * * (L) The journals and general ledgers. * * * (M) The minute book or books * * *" of the National Clay Products Company. "(P) National Clay Products Company fiscal inventory book. * * * Customers ledger * * * Order book * * * (T) The Journals and general ledgers and clay products shipment books of the Mason City Brick & Tile Company. * * * The general ledger of the American Brick & Tile Company, North Iowa Brick & Tile Company, Dennison Brick & Tile Company, Dennison Sewer Pipe Company, Mason City Clay Works, * * * and the combined general ledger of the Mason

City Brick & Tile Company * * *'' (naming last mentioned corporations, alleging that F. E. Keeler and Mrs. F. E. Keeler owned or controlled them.)

The matters which plaintiffs expect to prove by these books are with separate reference to each set alleged. Plaintiffs in amendment to petition for production of books and papers allege that the Denison Companies named, Mason City Clay Works, American Brick & Tile Company, North Iowa Brick & Tile Company, are controlled by F. E. Keeler and their books and the books of the Mason City Brick & Tile company are under his control.

The National Clay Products Company, F. E. Keeler and G. O. Gould filed resistance, alleging that plaintiffs had been furnished with books and reports of the National Clay Works, list of which is set out. These defendants set out at great length and in detail their objections to the petition for production. The Mason City Brick & Tile Company filed lengthy resistance, among other grounds alleging that ''This court is without jurisdiction to make any order to produce books and papers on petition of a party to a suit and against a person or corporation not a party thereto, and the bringing in of this defendant as a party to said suit for the sole and express purpose of being a defendant in the application to produce books and papers gives the court no jurisdiction to make any such order.'' The resistances do not appear to have been verified. Plaintiffs' response to the resistance alleges that some of the books of the National Clay Works have been produced, but they are incomplete and do not show the matters called for. An amendment denies that any of the books called for in their petition have been produced. Plaintiffs offered evidence in support of their application. The court held that the statute authorizing order for production of books and papers was not limited to the books and papers of a party to the suit, ''but may extend to those belonging to and in the possession of strangers. * * * Plaintiffs are not suing on their own behalf only but for the benefit of all other stockholders similarly situated * * * that the plaintiffs are entitled, speaking generally, to inspect the books, records and documents of the defendant corporation, and of all the defendants mentioned in the application and amendments * * * limited however to the inspection of books and documents containing matters that are

relevant to the issues. * * * That the defendants named in the application or petition * * * are ordered * * * to produce at the office of the clerk of this court in the court house in Mason City, Iowa, on or before the 14th day of December, 1931, at 10 o'clock in the forenoon of said date, to be there for inspection and copying to the attorneys of plaintiffs, or their agents or accountants, the books, papers and documents and writings described and designated in the application and amendment thereto * * * including the following. A. The stock record book or stock register of the Mason City Brick & Tile Company * * * (naming the above five other corporations) showing stock issued and outstanding between the first day of January, 1915, and the first day of July, 1926. (b) The general ledgers and journals of the individual books of F. E. Keeler, Mrs. F. E. Keeler and B. C. Keeler. The general ledgers of Mason City Brick & Tile Company * * * (naming the same five other companies) all checks issued to sellers of stock of National Clay Works * * * up to and including June 24, 1926, * * *. K. The stock certificate books and stock ledger of the National Clay Products Company from the time of its incorporation to the present time. L. The journals and general ledgers of the National Clay Products Company from the 24th day of June, 1926, to the present time. M. The minute book or books. * * * O. The inventory books of goods manufactured. * * * P. Fiscal inventory book * * * Q. The customers' ledger. * * * R. Order book, * * *'' of the National Clay Products Company. (Without limitation) ''T. The journals and general ledgers and clay products shipment books of the Mason City Brick & Tile Company from January 1, 1923, and up to January 1st, 1928. The general ledger of the American Brick & Tile Company, The North Iowa Brick & Tile Company, The Dennison Brick & Tile Company, The Mason City Clay Works, The Dennison Sewer Pipe Company, from the first day of January, 1923, and up to and including January 1, 1928. The combined general ledger of the Mason City Brick & Tile Company * * *'' (and the five other corporations above named.)

The documents ordered produced may be classified into: (1) Those of the National Clay Works, (2) those of the National Clay Products Company, (3) those of another party to the action, F. E. Keeler, and (4) those of strangers to the action.

I. With respect to the books and records of the National Clay Works it is to be observed that the stockholders of that company were the ultimate owners of the residue of its property, including the books. The business transacted by its officers and agents was transacted for the stockholders. Plaintiffs were stockholders. As such they were entitled to inspect the books and records of the corporation. Ellsworth v. Dorwart, 95 Iowa 108; Boardman v. Marshalltown Creamery Co., 105 Iowa 445; Drennan v. Central National Fire Ins. Co., 200 Iowa 931; Ontjes v. Harrer, 208 Iowa 1217. Plaintiffs' cause of action is based on their alleged continued and existing rights as shareholders. Defendants' offer of restoration and alleged furnishing of books and records of the National Clay Works are a recognition of plaintiffs' right of inspection. The record does not contain a complete description of all the books and records of the National Clay Works. There is a dispute as to whether tender of production of all has been made. Plaintiffs' petition for production stating that the books, papers and writings of which inspection is claimed ''are in the possession and under the control of the defendants'' is verified. Plaintiffs are entitled to have it received as an affidavit. 42 C. J. 493; 2 C. J. 318; Howell v. Poff, 241 N. W. (Neb.) 548. Defendants offer no contradiction. We see no ground for holding that plaintiffs have not the right to an order for inspection of all books, records and documents of the National Clay Works. The record sufficiently shows that they are under the control of the defendants to the action. We think, however, that the inspection both of these records and of the records of the defendants should be at the office of the National Clay Products Company.

So far as the order requires the production of the books and papers of the National Clay Works the writ of certiorari will be annulled and the order affirmed with a modification that the production shall be at the office of the National Clay Products Company in Mason City.

II. The defendant National Clay Products Company is the successor and has the property of the National Clay Works, or its proceeds. Plaintiffs' contention is that that property is held in trust for the stockholders of the old company of whom they are a part. A complete inspection by plaintiffs of the books and papers of the National Clay Products Company is necessary in

order to enable plaintiffs to trace the alleged property and its proceeds and to ascertain its present form, condition and worth. Defendants' offer of restoration, if made in good faith, as we must assume it is, would imply an expectation of full and intelligent consideration of it on the part of plaintiffs, to which an examination of the records and documents of the National Clay Products Company would be necessary. Such an examination to be of value would have to embrace all of the records of the National Clay Products Company. We are, therefore, of the opinion that the order should, as to such records, be affirmed, with the modification that examination shall be at its office.

■ III. The Books and Papers of F. E. Keeler. F. E. Keeler is a party defendant, and is alleged, with his confederates, to have manipulated and directed the proceedings whereby the assets of the National Clay Works came into the possession of the National Clay Products Company. It is alleged that the assets of the National Clay Works were transferred to and have been appropriated by him and the National Clay Products Company. Judgment is asked against him as well as the company. Plaintiffs state in their verified petition that the books, papers and writings demanded are in the possession and under the control of the defendants. This would include F. E. Keeler, who is properly included in the order to produce all the books of the National Clay Works and the National Clay Products Company. The private books of F. E. Keeler, however, doubtless embrace many matters irrelevant to the controversy in hand. A party may not be required to expose to his adversary, or the public, his private business affairs which have no relation to the matters in litigation. A party is entitled only to seek evidence which is material to his own case, not to pry into or to discover the case of his adversary. He is not entitled to a roving commission to ransack his adversary's books, papers or evidence, or to embark upon a mere fishing expedition or exploratory enterprise. Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398; Davis v. District Court, 195 Iowa 688; Dunlop v. District Court, 214 Iowa 389. The order assailed, however, granted the plaintiffs that very privilege. It makes no provision for sealing immaterial parts of the books and papers of F. E. Keeler, or for their inspection under the supervision of the court or a referee. The order ignores the necessities and convenience of

the private business of F. E. Keeler in matters in which the plaintiffs may have no interest. As to F. E. Keeler the order may be oppressive, and it exceeds the proper discretion of the court. It should be modified so as to permit F. E. Keeler to seal up parts of his private books which do not relate to the matters in controversy in this action. Martin v. D. B. Martin Co., (Delaware) 102 Atl. 373; 28 R. C. L. 420, 421; Carpenter v. Winn, 221 U. S. 533.

His affidavit is to be accepted in the first instance as sufficient proof of irrelevancy. If disputed he may, on proper application to the district court, be required to appear for cross-examination, and the court in case of dispute will have the ultimate determination of the question of relevancy. Id. It is further so modified that the production shall be at the office of the National Clay Products Company. The time for inspection may be determined by the trial court.

IV. The Books and Records of Mrs. F. E. Keeler, B. C. Keeler, Mason City Brick and Tile Company, and other companies not defendants.

Statutory proceeding to compel production of books and papers is a development of, and substitution for, bill of discovery. Post. Bills for discovery were within the auxiliary jurisdiction of equity as part of its power to compel discovery in suits in which no other relief than discovery was demanded. 1 Pom. Eq. 4th Ed., Section 205 et seq.; 2 Story Eq. (13th Ed.), Section 1483 et seq.; Ex Parte Boyd, 105 U. S. 647, 656, et seq.; 18 C. J. 1057 et seq.

Equitable jurisdiction to compel discovery, including production of documents, was founded on necessity, in that no other means was available to probe the conscience of an adverse party or to compel him to make disclosure. 18 C. J. 1057; 1 Pom. Eq., 4th Ed., Sections 191 to 215.

Generally ''no person can properly be made a defendant in the suit for a discovery, or compelled as such to disclose facts within his knowledge, unless he has an interest in the subject matter of the controversy in aid of which the discovery is asked * * * mere witnesses cannot be joined as defendants and obliged to answer; nor can a mere agent be made a party for purpose of obtaining a discovery from him. * * * Where it is desired to obtain discovery from a corporation in a bill filed

against it for that purpose, it is firmly settled by the authority of decided cases that a secretary or some other officer may and must be joined as a co-defendant, from whom the discovery may be obtained by his answer under oath. This exception is based wholly upon considerations of expediency, since a corporation can not make an answer on oath, nor be liable for perjury.'' 1 Pom. Eq., 4th Ed., Section 199.

See also, 18 C. J. 1063; 9 R. C. L. 169, et seq.

It was provided in Chapter 130 of the Code of 1851, entitled ''Evidence,'' Section 2390:

''A person who has a direct, certain, legal interest in the suit is not a competent witness unless called on for that purpose by the opposite party as hereinafter provided.''

Section 2415. ''A subpoena is the proper way of bringing a witness into court. * * * It may also require him to bring with him any books, documents, or other writings under his control and which he is not excused by law from producing in evidence.''

Section 2418. ''For a failure to obey a valid subpoena without a sufficient cause or excuse, or for a refusal to testify after appearance, the delinquent is guilty of a contempt of court. He is also liable to the party by whom he was subpoenaed for all consequences of such delinquency together with $50.00 additional damages. * * *''

Section 2421. ''In addition to the above remedies, if a party to a suit in his own right on being duly subpoenaed fails to appear and give testimony, the other party may at his option have a continuance of the cause as in cases of other witnesses and at the cost of the delinquent.''

Section 2422. ''Or the party so calling his opponent may in such a case himself become a witness, or, if he shows by his own testimony or otherwise that he could not have a full personal knowledge of the transaction, the court may order his pleading to be taken as true * * *''.

Section 2423. ''The district court may by rule require the production of any papers or books which are material to the just determination of any cause pending before it, for the purpose of being inspected and copied by or for the party thus calling for them.''

Section 2424. ''The petition for that purpose must state

the facts expected to be proved by such books or papers and that as the petitioner believes such books and papers are under the control of the party against whom the rule is sought, and must show wherein they are material. The rule shall thereupon be granted, to produce the books and papers or show cause to the contrary, if the court deems such rule expedient and proper.''

Section 2425. ''On failure to obey the rule or show sufficient cause for such failure the same consequences shall ensue as if the party had failed to appear and testify when subpoenaed by the party now calling for the books and papers.''

Section 2426. ''Though a writing called for by one party is by the other produced, the party thus calling for it is not obliged to use it as evidence in the case.''

The chapter also made provision for taking depositions and for perpetuating testimony.

By Section 3980 of the Revision of 1860:

''* * * no person shall be disqualified by reason of his interest * * * whether such interest be as a party thereto or otherwise. But the party * * * shall, except as hereinafter excepted, be competent and compellable to give evidence, * * *''

The other provisions of the Code of 1851, above quoted, were retained. Sections 4010, 4013, 4016, 4024, 4025, 4026 to 4029.

The Revision of 1860 further provided for annexing to pleadings interrogatories to adverse parties. The provisions for interrogation and production of books and papers made the former bill for discovery no longer necessary. It was further declared in the Revision of 1860, by Section 4127, that with certain exceptions not here material ''no action to obtain a discovery shall be brought.'' In 1862, 9th G. A., Chapter 28, provision was made for inspection of signature. Code 1873, Section 2730, Code 1931, Section 11220. The last legislative enactment on these subjects is found in Code of 1897, Sections 3431, 3630, 4601, 4654 to 4659, 4668; Code 1931, Sections 11254, 11129, 11316 et seq., 11333, 11336, 11337. The statute is that the court may, ''by rule, require production of any papers or books which are material to the just determination of any cause pending before it, for the purpose of being inspected and copied by or for the party thus calling for them;'' that the petition must state

that, "as the petitioner believes, such books or papers are *under the control of the party against whom the rule is sought*;" that, on failure to obey the rule or show sufficient cause "the same consequences shall ensue as if the party had failed to appear and testify when subpoenaed by the party now calling for the books and papers;" that, though produced, the party thus calling for a writing is not obliged to use it as evidence in the case. These were the provisions of the Code of 1851, and remain unchanged. The word "party" was used advisedly, and not as including a witness. Mrs. F. E. Keeler, B. C. Keeler (now dead), Mason City Brick & Tile Company, and the other corporations named, are not parties. The amendment to the petition for production did not operate to make them parties to the action. 47 C. J. 143.

The individuals and officers of the corporations having charge of the books could have been compelled to appear at the trial with their books on subpoena *duces tecum*. 28 R. C. L. 420. The parties interested and their books in that event would be under the protection of the court. It seems clear that the statute of 1851, making provisions for compulsory production of documents for inspection before trial, could have been intended to authorize order for production against adverse parties only. This is emphasized by the provisions of Section 2425, that failure to obey or show cause shall result in the same consequences "as if the party had failed to appear" and testify when subpoenaed, following the provisions immediately after Section 2421 and 2422, which provide for subpoenaing "a party to a suit" and the penalty of submitting to a continuance or having the pleading of the party calling him (his opponent) taken as true. We have held that these provisions are analogous to and in effect are a substitution for corresponding common law proceedings and equitable right of discovery. Dunlop v. District Court, 214 Iowa 389; Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398, 401. See Winneshiek County State Bank v. District Court, 203 Iowa 1277; Davis v. District Court, 195 Iowa 688; 18 C. J. 1119.

It is said in Iowa Loan & Trust Company v. District Court, 149 Iowa 66, 70:

"The statute makes no distinction between the books and papers belonging to or in the possession of a party to the suit

and those belonging to a stranger. All are subject to the rule upon a proper showing."

In that case, however, the jurisdiction of the court over strangers to subject them to a mere rule in the case was not raised, and shortly after that decision the court, in an opinion written by the same justice (Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398, 401), said that the statute "is a development of the old equity practice permitting a bill of discovery of the facts in the knowledge of an adverse party or of deeds or writings, or other things, in his custody or under his control, for the purpose of enabling the party asking therefor to prosecute or defend an action. Townsend v. Lawrence, 9 Wend. (N. Y.) 458. And, being analogous to such equity practice, it may be construed in the light of the rules governing it. The evident purpose and design of the statute is to furnish a litigant a speedy and summary way by which under the order of the court he may obtain written evidence material to his action or defense which is in the possession and control of his adversary. * * * It is manifest, therefore, that the facts expected to be proved by such books and papers must be shown to be material to the petitioner's action or defense. This seems to be very clear from the language of the statute itself, and it seems equally as clear to us that the statute does not require the adversary to disclose the evidence upon which he relies in his action or defense."

The subpoena *duces tecum* is ample to bring non-parties (in case of corporations, their officers) into court with all the books and papers in their possession. Resort to petition for production is unnecessary. At the same time, the possessor of the documents has the ample protection of the court. State v. Superior Court, 187 Pac. (Wash.) 358; 28 R. C. L. 420, 421.

The statute requires the petition to state that "petitioner believes such books and papers are under the control *of the party* against whom the rule is sought." Code 1931, Section 11317. The word "control" is evidently an extension of the word "possession," and used to prevent the evasion which the use of the word "possession" might permit. Provision for bringing in books and writings under the control of others is made through subpoena *duces tecum*. Section 11322. The witness is, with his

books and papers, brought into the immediate presence and under the protection of the court.

It is said by Justice Field in In Re Pacific Railway Commission, 32 Fed. 241, 250:

"Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves not merely protection of his person from assault, but exemption of his private affairs, books, and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value. The law provides for the compulsory production, in the progress of judicial proceedings, or by direct suit for that purpose, of such documents as affect the interest of others, and also, in certain cases, for the seizure of criminating papers necessary for the prosecution of offenders against public justice, and only in one of these ways can they be obtained, and their contents made known, against the will of the owners."

From these considerations it would seem to be clear that the legislature did not intend that litigants might subject the private books, papers and affairs of strangers to the litigation to inspection and copying. Such books and papers would, at the most, ordinarily be mere hearsay and inadmissible in evidence. The discovery allowed is of documents admissible in evidence. Travelers Ins. Co. v. Jackson, 201 Iowa 43.

As has been shown, it is not the purpose of the statute to permit fishing or exploring expeditions. We are of the opinion that the statute does not authorize a rule against a stranger to the action to produce for inspection and copying his private books and papers. See Gemsa v. Dorner, 256 Mich. 195, 239 N. W. 332; Marion National Bank v. Abell's Adm., (Ky.) 11 S. W. 300.

The order under review by its terms requires the defendants, and also other corporations, to deposit in the clerk's office for inspection and copying "the general ledgers and journals of the individual books of F. E. Keeler, Mrs. F. E. Keeler and B. C. Keeler" and "the general ledgers of" six corporations not parties to the case. Mrs. F. E. Keeler and B. C. Keeler (who is dead and whose personal representatives have not been impleaded)

and the corporations not parties apparently have no interest in the controversy. It is true that plaintiffs allege that "F. E. Keeler and Mrs. F. E. Keeler own or dominate and control" the corporations and that the books "are the possession and under the control of the defendants and the * * * (corporations) and F. E. Keeler as president * * *" and that "F. E. Keeler has under his control the books of Mason City Brick & Tile Company." It is alleged that the National Clay Products Company is fictional. It is not alleged or proved that the other corporations are fictions. They are distinct legal entities. The evidence is that F. E. Keeler and Mrs. F. E. Keeler own a majority of the stock of the Mason City Brick & Tile Company. B. C. Keeler (or his estate) and Edna Keeler are stockholders. Mrs. F. E. Keeler, though one of the majority stockholders, is not a party.

It does not appear that these individuals and corporations have any right to control or participate in the proceedings, or that they are parties in interest, or parties by class representation, or that they for other reasons come within the designation "parties," which usually is a technical word of precise meaning. 47 C. J. 14. Our conclusions are not to be understood either as applying to or excepting those who may for any reason be deemed substantially, though not nominally, parties.

The court, having no jurisdiction of the corporation, may not compel its officers to produce for inspection its books and papers or make discovery of its affairs. Ridgely v. Richards, 130 Fed. 387; Southern Ry. Co. v. North Carolina Corp. Com., 104 Fed. 700; Cassatt v. Mitchell C. & C. Co., 150 Fed. 32, 38; McCarter v. Farmers Loan & Tr. Co., (N. J.) 147 Atl. 785. See 18 C. J. 1063, 1064, 1083; Seaboard Air Line Ry. v. Lott-Lewis Co., (Ga. App.) 89 S. E. 495; United States Tire Co. v. Keystone Tire Sales Co., (S. C.) 150 S. E. 347; People v. Mut. Gas. L. Co., 74 N. Y. 434; American Sec. & Tr. Co. v. Brooks, (Mass.) 114 N. E. 732.

By the order the persons and corporations named are required to part with the possession of their private books and papers and deposit them in a public place, and in the most general terms to expose their private business affairs to the inspection of attorneys, agents and accountants of strangers. We pass constitutional questions argued.

As to documents of Mrs. F. E. Keeler, B. C. Keeler, the Mason City .Brick & Tile Company, and the other corporations not parties to the suit, the writ of certiorari is sustained and the order of the District Court reversed.

V. Many other interesting questions, including constitutional rights, have been argued, but we find no occasion to consider them.

VI. To the extent indicated the order of the district court is illegal and subject to annullment on certiorari. Davis v. District Court, 195 Iowa 688; Travelers Ins. Co. v. Jackson, 201 Iowa 43; Dunlop v. Dist. Court, 214 Iowa 389. The order under review is therefore in part reversed, in part affirmed, and in part modified as hereinbefore indicated.—Writ sustained in part; annulled in part.

All justices concur.