LEONARD C. NEUFELD et al., Petitioners, v. HONORABLE RUSSELL JORDAN, Judge, Respondent.

No. 47516.

(Reported in 38 N. W. 2d 601)

1064

AUGUST 5, 1949.

Abramson & Myers, of Des Moines, for petitioners.

Hallagan & Lucier, of Des Moines, for respondent.

MULRONEY, J.—The petition of William J. Marks alleged that he was the owner and inventor of a windshield spray device of a certain numbered and filed patent application (which application is still pending) and that on July 5, 1946, he entered into a license agreement with the Neufeld Enterprises, Inc. A copy of the license agreement was attached to the petition. It was signed by Marks and Leonard C. Neufeld, as president of the Neufeld Enterprises, Inc. In this license agreement the parties agree that Marks is the sole inventor and owner of the patent application· and the licensee is given the exclusive right and license to make, use and vend the device, which was covered in the patent application, throughout the United States and its territorial possessions, including the right to sublease, all on a royalty basis of a certain per cent of the licensee's selling price to be paid to Marks.

The petition goes on to allege that this license agreement was prepared by one Lowell, a patent attorney, who at the time was representing both parties. Other paragraphs of the petition

state that Leonard C. Neufeld and others organized a corporation on April 15, 1947, called the Saf-T Spray Corporation; "that the general nature of the business to be transacted by the said corporation being the manufacture, sale and distribution at retail or wholesale of the said windshield device"; and that on April 29, 1947, the articles of incorporation were amended and changed from Saf-T Spray Corporation to The Delman Corporation.

In one paragraph of the petition there is an allegation, probably of little interest here, that plaintiff was induced by Lowell to sign a contract to pay Lowell twenty per cent of all royalties he received under the license agreement. The petition then alleges the license agreement was terminated on or about July 15, 1947, and a copy of this termination agreement is set forth. It is a short instrument executed by the Neufeld Enterprises, Inc. by its president, Leonard C. Neufeld, and the plaintiff, completely canceling and terminating the license agreement by "mutual consent" and each party releases the other from "any and all liability under the license agreement."

In the remaining paragraphs of the petition plaintiff charges a combination and conspiracy on the part of all the defendants (petitioners here) for the purpose of cheating and defrauding plaintiff, alleging they procured the termination agreement from him by false representations and alleging that it was procured at a time when the defendants had already obtained contracts and agreements for the manufacture, sale and distribution of the spray device and that since the termination agreement the defendants have "engaged extensively in the manufacturing, selling and distributing of the same to the exclusion of plaintiff from any and all rights, interests, profits, or royalties from the said windshield spray device."

The prayer of the petition was for an injunction against defendants from manufacturing and selling "said windshield spray device" and for an accounting and damages.

The separate, but identical answers of Leonard C. Neufeld, Neufeld Enterprises, Inc. and the Delman Corporation admit the formal allegations of the status of the parties, the execution and termination of the license agreement and deny all other

allegations, and with respect to the termination agreement defendants each allege the execution of this instrument was at plaintiff's special instance and request.

Following the filing of defendants' answers plaintiff filed his Application for Inspection of Books and Papers, under Rule 129, Rules of Civil Procedure, alleging that it was necessary that he "be granted authority to inspect the accounting and sales books and records, papers, drawings, blueprints, correspondence, including telegrams, of the defendants * * * with all persons, firms and corporations with whom the defendants have carried on business with and for the use, manufacture, sale, and distribution of the windshield spray device being manufactured, sold and distributed by them, which accounting and sales books and records, papers, drawings, blueprints, correspondence and telegrams are in the possession and under the control of said defendants, and to make copies and photostats of the same as they are material to the just determination of this cause." The application alleged that such accounting and sales books and records and papers would reveal and show the firms that the defendants have contracted with for the use, sale, manufacture and distribution of the windshield spray device "alleged to be owned and invented by the plaintiff"; the number and money received for same; the costs and profits; that all blueprints and drawings that the defendants are and have been using in the use, manufacture, sale and distribution of their said windshield spray device are the same as those of the windshield spray device owned and invented by the plaintiff; the fraud and conspiracy perpetrated by the defendants; the confidential knowledge acquired by the defendants Leonard C. Neufeld and Neufeld Enterprises, Inc. from the plaintiff and the violation of the faith and trust reposed in said defendants; and other material allegations of plaintiff's petition.

The defendants Leonard C. Neufeld, Neufeld Enterprises, Inc. and The Delman Corporation filed their resistance to the above application on the ground that it fails to identify the books and papers sought to be inspected or to disclose that they are material to a just determination of this cause; that the applicant is engaged, at least indirectly, in the business of mak-

ing, manufacturing and selling a windshield spray device in that he has licensed a Chicago corporation to sell such a device "which is substantially similar in all respects to the device which has been developed and is being manufactured by the defendant, The Delman Corporation" and the application is a "fishing expedition designed to rifle defendants' files and obtain confidential and other additional information from the defendants for purposes other than to discover the material facts necessary to a just determination of the cause"; that the action is for an accounting, and defendants should not be required to expose to applicant their private business affairs before it is determined that applicant is entitled to such an accounting; that some of the blueprints and specifications in possession of the defendant, The Delman Corporation, and used in the manufacture of its device were prepared by and are the property of automobile manufacturers who distribute said device and the same are privileged and highly confidential; that neither the defendant Leonard C. Neufeld nor Neufeld Enterprises, Inc. has made windshield spray devices and the windshield spray device manufactured and sold by the Delman Corporation is different in all of its component parts from the windshield spray device which plaintiff claims to have invented and the Delman Corporation has five separate patent applications pending on its device.

The defendants' resistance was supported by the affidavit of Leonard C. Neufeld which states that he is president of both the defendant corporations and fully familiar with the windshield spray device which plaintiff claims to have invented and the one the Delman Corporation is manufacturing and selling; that the one the Delman Corporation is manufacturing and selling is not the one plaintiff claims to own and to have invented; that the books and records showing the Delman Corporation's customers, and the firms from which it purchases raw supplies are highly confidential and would be of great value to plaintiff or any other competitor engaged in the manufacture and sale of a windshield spray device; and that the Delman Corporation's blueprints were prepared for it at great expense and they are highly confidential in that they show new and novel features

and details of construction on which patent applications have been based.

Upon the foregoing record of petition, answers, application, resistance and supporting affidavits the trial court granted the application and ordered defendants to "make available to the plaintiff for discovery and inspection at the place of business of the defendant, The Delman Corporation, 506 3d Street, in the City of Des Moines, County of Polk, State of Iowa, in the ordinary course during business hours with permission of the plaintiff to copy and make photostatic copies thereof by his attorneys, clerks, accountants and assistants, as he may desire or deem necessary, of all of the sales books and records, contracts, papers, drawings, photographs, blueprints, sketches, advertisements, models and all letters and correspondence, and copies of all letters and correspondence, all telegrams and copies of telegrams and communications with all persons, firms and corporations with whom the defendants have corresponded, communicated, negotiated, contracted, or in any manner carried on or are now carrying on business in the use, manufacture, sale, and distribution of windshield washers or windshield spray devices in the custody and under the control of the defendants, and that said discovery and inspection continue each business day thereafter until said inspection, discovery and examination shall be completed."

The defendants sought and were granted a preliminary writ of certiorari in this court and further proceedings in the trial court were stayed pending our review of the above order of the trial court.

I.   Before there can be any accurate appraisal of the trial court's order for inspection which he found necessary for, in applicant's language, a just determination of this cause, there must be a determination of the nature of plaintiff's cause of action. This must be gleaned from the allegations of his petition. Is he suing a licensee for breach of a license agreement that is still in full force and effect? Obviously not, for he pleads that the license agreement was terminated and he sets forth the termination agreement. While he alleges he was induced to execute the termination agreement by the defendants' fraud,

he does not ask to have it set aside and the license agreement reinstated. By the termination agreement the plaintiff was restored to freedom to license others to manufacture his windshield spray device (a right which the later affidavits would indicate he took advantage of) and he specifically pleads that "the license agreement was terminated" by this instrument. Therefore this is not a suit for accounting under an existing license contract.

The suit sounds like an action by an inventor, protected under some provisions of the United States patent laws, for accounting and injunction against unauthorized manufacturers of his invention. If he had alleged a patent, such a suit would be an infringement suit, cognizable only in federal courts. New (1948) Title 28 U. S. C., section 1338; 48 C. J., Patents, section 521. In defendants' brief it is stated that plaintiff "alleges in his petition that the device being manufactured and sold by the defendants is his device and it is the principal controversy to be decided on the trial." If it is "his device" before patent, it must be because of some patent laws that we are not aware of. In any event State courts have no jurisdiction to decide such "principal controversies." The sufficiency of the petition to state a cause of action was not raised by the defendants and no attack was made on jurisdictional grounds. The answers are but little more than general denials after admitting the license agreement and its termination. Their resistance to the application indicates defendants thought that they were defending against an infringement suit and in the brief here they describe plaintiff's action as "in the main * * * an action for an accounting of the profits which plaintiff claims he is entitled to recover from the defendants with respect to their manufacture and sale of his device."

There is in the suit the allegations that defendants manufactured his device while the license agreement was in force and before the termination agreement was executed, and failed to account to him for royalties. But in the termination agreement which he pleads, each party releases the other "from any and all liability under the license agreement" and nowhere does plaintiff ask to have this release set aside. If there is a cause of

1070

action pleaded for accounting for the manufacture of the sprays under the license agreement before its termination, it is the only action there is, of which the trial court could take cognizance, and the order for inspection which the trial court issued was far too broad for such a suit.

■ We are of the opinion the writ of certiorari should be sustained. Our review here is limited to the question of whether the inspection ordered is material to plaintiff's case. But we are left to speculate as to the nature of plaintiff's case. We cannot determine the size order plaintiff needs for his case until we find his case.

■ If it be thought we are raising questions as to the sufficiency of the petition, which defendants did not see fit to question, our answer is that in this review on certiorari the question is one of jurisdiction or other illegality. We conceive it to be our duty upon this appeal to place the order of the trial court beside the petition and determine if the order squares with the necessities of the pleaded case. If it does not, the trial court acted illegally and the writ should be sustained. National Clay Products Co. v. District Court, 214 Iowa 960, 243 N. W. 727. We do not find the order necessary for we are too much in doubt as to the case plaintiff pleaded. Therefore the writ is sustained.—Writ sustained.

All JUSTICES concur except MANTZ, J., not sitting.