TRAVELERS INSURANCE COMPANY, Petitioner, v. D. V. JACKSON, Judge, Respondent.

DISCOVERY: Production and Inspection of Writings—''Paper'' Defined. A laboratory analysis, duly reduced to writing, of an organ of the human body and of the contents thereof is a ''paper,'' within the meaning of the statute relative to the compulsory production of ''papers or books'' (Sec. 11316, Code of 1924), and the party to an action who has the exclusive possession thereof may be compelled to produce it for the inspection of the other party when such inspection is material to the issue whether the deceased died by accident or by suicide by means of poison; but the production of private correspondence or memoranda relative to the analysis may not be coerced.

Headnote 1:    18 C. J. pp. 1116, 1119.

*Certiorari to Muscatine District Court.*—D. V. JACKSON, Judge.

DECEMBER 15, 1925.

CERTIORARI proceeding to test the legality of an order by

the district court requiring the production of "papers," under the provisions of Section 4654, Code of 1897.—*Annulled in part; affirmed in part.*

*Cook & Balluff,* for petitioner.

*Hoffman & Hoffman* and *Mathew Westrate,* for C. R. Stafford, Administrator with will annexed of Stella Jayne, deceased, the real party in interest.

EVANS, J.—The record discloses that there was pending in the district court of Muscatine County an action entitled Stafford v. Travelers Insurance Company. This action was upon a policy of accident insurance issued by the defendant therein, upon the life of W. R. Jayne, since deceased. The beneficiary in such policy was Stella Jayne, the widow of the insured, and the action was instituted by her in the first instance. She died pending the action, and her administrator, Stafford, was substituted as plaintiff. In such action the plaintiff alleged that the cause of the death of said Jayne was accidental, and not otherwise. The defendant answered with a general denial, and with the further averment that his death resulted from suicide. The policy sued on expressly excluded liability for death by suicide. The plaintiff in that action filed his application for a rule upon the defendant to produce "papers," under Section 4654. There was a showing by affidavits pro and con in support of, and in resistance to, such petition. It was made to appear that there had been a post-mortem examination and autopsy on the body of Jayne, and that this was conducted by two physicians selected by the plaintiff and two other physicians selected by the defendant, all of whom acted in co-operation in the matter of such autopsy. It is further made to appear that the two physicians representing the defendant took certain organs from the body of Jayne for the purpose of making, or having made, a careful laboratory analysis thereof. It was averred by the affiants for the plaintiff therein, and denied by the affiants for the defendant therein, that said physicians for the defendant agreed that the results of the laboratory analysis should be communicated to the physicians for the plaintiff. Considerable em-

phasis was placed on this agreement as a basis for the application of the rule. The prayer of the application was:

"Wherefore, plaintiff asks for a rule or order from this court to require the defendant to produce all papers, findings, records, entries, and memorandum of the laboratory analysis and inspection or writings made by any chemist or laboratory expert who examined said tissues and vital organs of said William R. Jayne, including the findings and record made by said Dr. Lamb and Dr. Middleton, and submit the same to the plaintiff for the purpose of being inspected and copied, as by statute provided."

The principal allegation upon which such prayer was predicated was the following:

"The Travelers Insurance Company of Hartford, Connecticut, through its representatives, requested said Stella Jayne, the wife of William R. Jayne, who was in possession of his body, for permission to hold an autopsy on the body of her said husband, and to remove certain tissues and parts of organs therefrom, in order to have them subjected to laboratory inspection and analysis, and a finding and record made of the results of such laboratory analysis and inspection, and to have such results and findings preserved, and to furnish the same, or copies thereof, to the plaintiff and to the defendant as soon as made."

The order of the court was as follows:

"* * * the court now finds that no good cause has been shown why the petition should not be granted, and orders that the defendant produce and furnish to the plaintiff within 5 days all papers, findings, records, entries, and memoranda of laboratory analyses and inspection of the tissues and vital organs of Wm. R. Jayne, deceased, in its possession or under its control, as will tend to show that the death of the said Wm. R. Jayne was due to an accident."

The legality of this order is challenged *in toto* by the plaintiff herein, who was the defendant in said action.

Section 4654 provides:

"The district or superior court may in its discretion, by rule, require the production of any papers or books which are material to the just determination of any cause pending before

it, for the purpose of being inspected and copied by or for the party thus calling for them."

We have given a broad and liberal interpretation to that statute. *Iowa Loan & Tr. Co. v. District Court,* 149 Iowa 66.

We have also defined its limitations. *Grand Lodge A. O. U. W. v. District Court,* 150 Iowa 398; *Davis v. District Court,* 195 Iowa 688.

We have held that the purpose of this statute is to require the production of documentary evidence which would be admissible as such in evidence. The statute applies to *"books or papers"* which are material to a just determination" of the cause. No "books" are involved herein. Our attention is directed solely to the "papers." The prayer of the application for a rule which we have quoted above, calls not only for "all papers," but for "findings, records, entries, and memoranda." It also calls for "the findings and records made by Dr. Lamb and Dr. Middleton." The doctors thus named were the doctors of the insurance company. The order granting the rule, granted the same substantially in the terms of the prayer of the applicant. The only showing in support of the application was that there had been a laboratory analysis. Perhaps it ought to be assumed that such laboratory analysis would contain many details which could be safely preserved only by committing them then and there to paper. There is no showing that there is in existence any other "paper," "record," or "finding" which could in any manner serve any purpose to the applicant as material and admissible evidence. It is suggested and assumed in argument that Drs. Lamb and Middleton have communicated, perhaps by letter, with the insurance company, and have expressed opinions, including doubts, on various features of the autopsy and of the laboratory analysis. No reason is apparent why such sweeping terms should be used in the order, unless they were intended to include all communications by such physicians to their own employer, on the subject under consideration. Manifestly, such "papers" would not be admissible in evidence. The only guide set by the court for identifying the "papers" was that they should "tend to show that the death of Jayne was the result of accident." If the defendant insurance company were to make return to the court's order to the effect that it

had no "papers" or "memoranda" that *tended to show* such fact, it would excuse further performance in a literal sense. And yet the good faith of such a showing might still be challenged, and only a final production of all "papers" in the possession of the defendant could satisfy such challenge. The litigant ought not to be put in such a position. The issues made in the pleadings indicate that the defendant insurance company is attempting to prove death by suicide. It was searching for poison in the organs. If the doctors found any, would that tend to show death by accident? Manifestly not. If the doctors failed to find poison, would that tend to show death by accident? It may be that, if the autopsy disclosed all the vital organs to be normal and healthy, such fact might be material and proper to be considered in connection with other facts tending to show accidental death.

That the applicant was not entitled to the production of private letters or communications or memoranda or opinions or findings by Drs. Lamb and Middleton to the insurance company as their employer, is quite clear. None of such items would be admissible as instruments of evidence, though the applicant might gain practical advantages in the trial of the case because of their perusal. But the statute cannot be used to such an end. To say the least, therefore, the order was too broad. The only question in our minds at this point pertains to the direct results of the laboratory analysis. Can these be deemed a "paper," within the meaning of the statute? Was the applicant calling for a "paper" or calling for information? He had a remedy by interrogatories attached to his pleading, to acquire mere information. Must we assume that the results of the analysis were committed to paper? If they were not, and if they exist merely in the memory of the participants, could we then say that they should be committed to paper by such participants and furnished in obedience to the rule? As against this, it is to be said that both parties, in the presentation of their case here, have assumed that the results of the analysis were committed to paper, and that the same was furnished to the insurance company. In view of the fact that the results of the laboratory analysis will be material upon the trial, and that they will be provable in some manner, and that the insurance com-

pany has the exclusive access thereto, and that no other analysis is practicable, we are disposed to solve the doubt in favor of the order of the trial court at this point, and to let the order stand, so far as it relates to the direct results of the laboratory analysis. The order will be modified so as to require the defendant in the action to furnish to the plaintiff a copy of the direct results of the laboratory analysis, and to exempt it from furnishing private correspondence or memoranda or expressions of opinion as between it and the physicians employed by it. To this extent the order of the district court will be annulled, and in all other respects affirmed.—*Annulled in part; affirmed in part.*

STEVENS, VERMILION, and MORLING, JJ., concur.