G. WILLIAM DUNLOP, Petitioner, v. DISTRICT COURT OF GREENE COUNTY et al., Respondents.

Nos. 40983, 41222.

DECEMBER 17, 1931.

REHEARING DENIED APRIL 8, 1932.

Thomas & Loth, for petitioner.

Salinger, Reynolds, & Meyers, for respondents.

PER CURIAM: On February 19, 1931, the petitioner, G. Wm. Dunlop, as plaintiff brought an action in equity to foreclose a mortgage on certain Greene County real estate. This mortgage secured a note of $5,000 executed by Minnie B. Haag to the petitioner. The note and mortgage were dated May 10, 1930.

Walter G. Holden later was made a party defendant to this action by the plaintiff therein, who is the petitioner here, through an amendment to the petition. It is conceded in argument that for many years Minnie B. Haag and the father of the appellant Holden operated a private bank at Scranton. Financial difficulties overtook the banking business and a receiver was appointed for the alleged partnership. Holden's father. claims, according to the argument, that Minnie B. Haag is indebted to him for the advancement of more than his share of money to pay partnership obligations: that is to say, it is contended in the argument that Minnie B. Haag did not advance her share of the funds to pay the alleged partnership debts. This claim of the father, the contention is made in argument, was assigned to Walter G. Holden, a defendant in said equity case.

Apparently it is claimed in the argument by Holden, the defendant, that he expects to collect, under the assignment, the

aforesaid claim against Minnie B. Haag through a supposed attachment already levied on the land, or by some other method very vaguely hinted at in the argument. These facts concerning Holden's procedure already taken or anticipated, rather indefinitely appear in the argument. Nevertheless, it seems to be Holden's argument that the note and mortgage above named were obtained by the plaintiff in the foreclosure suit, who is the petitioner here, from Minnie B. Haag through one of the following methods: First, fraud; and, second, forgery. And further the contention seems to be that the note and mortgage were rendered void by the alteration of one or both of the instruments. Nothing definitely appears, however, concerning this because Holden filed no pleading in the foreclosure proceeding. Rather than presenting issues through pleadings, Holden in his argument asks us to surmise what his contentions may be in the foreclosure action. The action to foreclose the mortgage has in no way been consolidated with Holden's supposed attachment suit, if one exists.

In any event, Holden appeared in the present foreclosure proceedings and filed an application requiring the plaintiff there, and the petitioner here, to produce for inspection the note and mortgage in suit. Such application was unverified and contained no allegations concerning the materiality of the requested inspection. Attention is especially called to the fact that the inspection was asked by Holden in order to enable him to plead. There is nothing, however, as before said, in the application to indicate why or in what way Holden would be aided in his pleading in establishing his defense by such inspection. Copies of both the note and mortgage were attached to plaintiff's (petitioner here) petition in the foreclosure action. The petitioner had no notice of the application to produce the original papers, and the same was presented by Holden to the court without the petitioner's presence.

An ex-parte order was granted Holden by the district court, requiring that the note and mortgage be deposited with the clerk of the district court for Holden's inspection. As before explained, Minnie B. Haag neither appeared nor pleaded in the cause, and was, and now is, in default. Upon learning of the ex-parte order, the petitioner appeared and moved that the order for the production of the note and mortgage be set aside. The

basis for the petitioner's motion to set aside the order to produce the papers was: First, the application was unverified; second, the application stated no material reason for the production of the papers; and, third, the statute authorizing the production of the papers was in no way complied with. A hearing was had upon the petitioner's application to set aside the order. Both the petitioner and Holden appeared at that hearing. After listening to the parties upon this occasion, the district court overruled the petitioner's motion and let the order for the production of the papers stand. To review that action of the district court this writ of certiorari was obtained.

I. Ordinarily an order for the production of papers is not reviewable on appeal before judgment. Cook & Wheeler v. Chicago, R. I. & P. Ry. Co., 75 Iowa 169; Devier v. Economic Life Association, 106 Iowa 682; Stagg v. First National Bank, 203 Iowa 84. Under proper circumstances, certiorari will lie to review such order for the production of papers. Davis v. District Court, 195 Iowa 688; Iowa Farm Credit Corporation v. Hutchison, 207 Iowa 453. In the words of this court, as expressed in Davis v. District Court (195 Iowa 688), supra, reading on page 693:

"It is discretionary with the court whether a rule shall be entered, and, so far as the court confines its ruling within the discretion allowed by statute, or it is merely erroneous, it is not subject to review in this court by an original proceeding in certiorari. * * * If, however, the order goes beyond the discretion and authority of the court, and thereby becomes illegal, or the court exceeds its jurisdiction, it is subject to review by certiorari."

Hence, it is necessary now to determine on this certiorari proceeding whether the district court acted illegally or exceeded its jurisdiction in granting the order to produce the papers.

II. According to the statutes involved, the district court may, in its discretion, require "the production of any papers or books which are material to the just determination of any cause pending before it, for the purpose of being inspected and copied by or for the party thus calling for them." Section 11316, 1931 Code.

Following the foregoing provision, and supplementary thereto, Section 11317 of that Code provides as follows:

"The petition for that purpose shall be verified, and must state the facts expected to be proved by such books or papers, and that, as the petitioner believes, such books and papers are under the control of the party against whom the rule is sought, and must show wherein they are material. The rule shall thereupon be granted to produce the books and papers, or show cause to the contrary, if the court deems such rule expedient and proper."

So far as the statute is concerned, then, the order to produce the papers cannot be granted unless the application shows wherein the documents are material.

It is contemplated also under Section 11317, supra, that the order to produce the papers shall not be granted providing the opposite party can show a cause why such production should not be made. To meet those statutory requirements, Walter G. Holden, aforesaid, presented to the respondent court an unverified application without any statement therein concerning the materiality of the inspection desired. Nowhere in the application does it appear in what way the original papers will be material to the defense of Walter G. Holden. He is not entitled to books and papers under the statute which tend only to disprove his claim. Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398 (local citation, 403).

Surely the papers demanded would defeat the contentions of Holden unless avoided under some special circumstance. There is nothing in the application to indicate the existence of such special fact or circumstance. Consequently the application for the order to allow the production of the papers is fatally defective under the statute. The materiality of the papers sought as a defense in no way appears. Because of the defects in the application, the district court did not have jurisdiction and acted without authority, and illegally, in making the order. See Grand Lodge A. O. U. W. v. District Court (150 Iowa 398), supra; Iowa Loan & Trust Company v. District Court, 149 Iowa 66; Beebe & Co. v. Equitable Mutual Life & Endowment Association, 76 Iowa 129; and other cases above cited.

Here the matter complained of is something more than mere

error. It goes to the illegality of the order and lack of authority in the district court to act. Jurisdiction is involved. A statutory petition is essential to enable the court to grant the relief. Unless the petition meets the statutory prerequisites, there is in fact no statutory petition. Beebe & Co. v. Equitable M. L. & E. Association (76 Iowa 129), supra.

According to the return no evidence at all was submitted to the district court to sustain the application of the said Holden. All that appears in addition to the unverified application is the argument of Holden's counsel. This discussion of counsel was not made in the nature of a professional statement, but rather as an ordinary argument. Moreover, this argument was not made a part of the record, according to the certificate of the clerk in the district court. Therefore, the argument does not purport to be a transcript or copy of the record in the case. Nor does it pretend to be a certificate of any record therein. Even statements of the district court to bolster up the record are properly stricken from the return. Storie v. District Court, 204 Iowa 847; Crosby v. Clock, Judge, 208 Iowa 472. Likewise the mere argument of counsel should be stricken from the return. The petitioner moved to have the same stricken, and the motion is hereby sustained.

Necessarily, then, under the rule announced above that certiorari, rather than appeal, is the proper remedy, the petitioner is entitled to relief in the case at bar, and his writ of certiorari should be sustained. During the discussion it has been assumed, without deciding, that Holden in any event could procure an order for the production of the papers before filing his answer.

III. Regardless of the conclusion reached in the foregoing discussion, it is further contended by Holden that in addition to the statute he is entitled to have the papers produced on the theory of oyer or profert. Oyer and profert are ancient terms and designate a practice used under the common-law system. 49 Corpus Juris, 602, Section 865.

"The doctrine of profert as employed at common law has no place in the code system of pleading, ample provision otherwise existing for the production and inspection of papers." 49 Corpus Juris, 602 and 603. Section 865.

Under the Iowa statute, there are provisions superseding

both profert and oyer. Section 11129 of the 1931 Code provides:

"No pleading which recites or refers to a contract shall be sufficiently specific unless it states whether it is in writing or not."

If it is in writing, a copy of the paper or contract relied upon must be set forth. Section 11141 of the same Code. That the practice of the common law concerning oyer and profert is superseded by Sections 11129, 11316, and 11317, supra, see Beebe & Co. v. Equitable Mutual Life & Endowment Association (76 Iowa 129), supra.

Furthermore, the statutory proceeding for the production of material papers is "analogous to the equity practice" under a bill of discovery. Grand Lodge A. O. U. W. v. District Court (150 Iowa 398), supra, local citation, 401. Whether, in view of the statutory procedure, there is any other method by which the books and papers might be obtained, we do not now decide, for it is enough to say that Holden does not bring himself within any such contemplated rule.

IV. An appeal from the same judgment and order of the district court is pending in this court. Holden, as appellee, moved to dismiss the same for certain causes stated. That motion is overruled, but the appeal is dismissed because in view of our holding in the certiorari proceeding, the same now becomes moot.

Wherefore the writ of certiorari was properly issued and the same is sustained. Accordingly, the order and judgment of the district court is reversed.—Writ sustained, and judgment of the District Court reversed.