Howard Chandler, Petitioner, v. Heinrich C. Taylor, Judge, Respondent.

Fred Mitchell Chandler, Petitioner, v. Heinrich C. Taylor, Judge, Respondent.

Nos. 46410
46411.

JANUARY 11, 1944.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, for petitioners.

G. C. Stuart, of Chariton, for respondent.

MILLER, J.—This is one of the first cases to come to this court under the new Rules of Civil Procedure. The proceedings arise out of an action in equity by Carl Rudeen as plaintiff against defendants Fred Chandler, Howard Chandler, and Fred Mitchell Chandler. The petition in equity was filed on June 3, 1943. On August 12, 1943, Fred Chandler died. Steps were taken to substitute the administratrix of his estate as party defendant. However, such substitution had not been accomplished at the time of the entry of the order complained of herein, so that Howard Chandler and Fred Mitchell Chandler are the only petitioners before this court in these proceedings in certiorari.

The petition in equity as later amended asserted: Plaintiff Rudeen resides near Pocatello, Idaho, and is engaged in raising livestock; defendants reside at Chariton, Iowa, and are engaged in selling livestock on a commission basis; the Chandlers are associated together but Rudeen does not know the exact interest of each, whether on a partnership basis or otherwise; Rudeen had correspondence with Fred Chandler, as a result of which Rudeen

shipped to Fred Chandler 596 head of ewes to be sold on a commission basis; the ewes arrived at Chariton, Iowa, on October 24, 1942; on November 5, 1942, Howard Chandler advised Rudeen that the ewes had been sold for $4,151, against which sum Chandler claimed offsets of $1,889.64 and tendered a check for $2,261.36 as the balance due Rudeen, which was refused; the ewes were shipped to Chandler to be sold as breeding ewes but Chandler sold them to a packing company at Ottumwa; the Chandlers are indebted to Rudeen for at least $3,000. The prayer was that the Chandlers render a full account of the handling of Rudeen's ewes, that Rudeen have judgment for the amount found to be due him, and that an attachment issue to secure the payment of $3,000.

Howard Chandler filed a separate answer which asserted that his only connection with Fred Chandler was that of an employee or assistant; that he had no interest or share in the business of Fred Chandler and received no share of the profits therefrom. Fred Mitchell Chandler filed a separate answer that denied that he had any business connection with Fred Chandler and asserted that he had no connection whatever with the transaction with Rudeen in any way. Rudeen filed a reply to these separate answers and therein asserted that Howard Chandler and Fred Mitchell Chandler were partners with Fred Chandler and that each shared in the profits derived from said business, that the Chandlers intentionally conducted the business so that it would be difficult to determine the exact interest of each therein.

With the issues thus joined, Rudeen filed an unverified application for the production of books and papers, which asserted: It is important for Rudeen to know the exact interest of each of the Chandlers in the business operated in the name of Fred Chandler; the office was principally under the supervision and control of Howard Chandler; the proceeds from sales on commission basis have not gone into the bank account of the Fred Chandler Live Stock Commission account in the National Bank & Trust Company in Chariton, but have been handled in cash or through some other bank account; Fred Mitchell Chandler has purported to purchase real estate in Lucas county and a large part

of the purchase price has been paid in cash; Rudeen believes that this money was received from the business handled in the name of Fred Chandler. Production of various books and papers was requested, Rudeen asserting that they were material to a just determination of the cause, that practically all of the records requested were in the possession or under the control of Howard Chandler and those not in his possession or control were in the possession or under the control of Fred Mitchell Chandler.

Howard Chandler filed a verified resistance to the application for the production of books and papers which asserted: The application was inadequate to confer jurisdiction upon the court; the application fails to identify the books and papers or to disclose that they are material to a just determination of the cause; the application is fatally defective for lack of a verification and because it does not contain an affidavit of any person knowing the facts recited therein; the facts recited are insufficient to entitle applicant to relief; the application is a palpable fishing expedition, designed to rifle an adversary's files; Howard Chandler has no books, papers, letters, files, or other documentary evidence under his control that will in any way show or tend to show any interest in the business operated by Fred Chandler; all the personal effects of Fred Chandler are in the custody of the administratrix of his estate. Fred Mitchell Chandler filed a verified resistance of similar import.

The court ordered Howard Chandler and Fred Mitchell Chandler to produce the following books, papers, and records, or such part of them as may be in the possession or control of either of them, to wit:

"1. Bank statements of, and cancelled checks drawn on the account of 'Fred Chandler Live Stock Commission Account' in the National Bank and Trust Co., of Chariton, Iowa from September 1, 1942 to September 1, 1943, both dates inclusive.

"2. All books and records showing all transactions handled in the name of Fred Chandler, relative to the handling and sale of all live stock on commission whether said live stock was the property of any one or more of the defendants originally named in the petition filed in this cause, and for the period from September 1, 1942 to September 1, 1943, both dates inclusive.

"3. All correspondence received either in the name of Fred Chandler, Howard Chandler or Fred Mitchell Chandler, and copies of all letters sent and signed by any one or more of said defendants, or signed Fred Chandler by either or both of the other two defendants, and pertaining to the purchase, sale or handling on a commission, in the name of Fred Chandler of any live stock which was the property of any one or more of said three defendants within the year from September 1, 1942 to September 1, 1943, both dates inclusive.

"4. All books, papers and records, including bank statements or bank deposit records, showing the individual income of each and all of the defendants, Fred Chandler, Howard Chandler and Fred Mitchell Chandler, and the sources from which said income was received.

"5. All books, papers and records of every nature and kind which refer, in whole or in part, to the receipts and disbursements made in connection with the purchase, sale or handling upon commission any live stock by Fred Chandler, or in his name by any other person, or which tends to disclose in any respect the manner in which, the persons by whom such business was conducted, and the interest therein, and income therefrom as to any one or more of the three defendants named in the original petition filed in this cause, for the year from September 1, 1942 to September 1, 1943, both dates inclusive."

Two writs of certiorari were issued by the chief justice of this court to review the legality of such order. The two causes have been ordered consolidated and were submitted together.

I. The sufficiency of the application for the production of books and papers is challenged because it was not verified. Heretofore the procedure for such relief was prescribed by sections 11316, 11317, and 11318, Code, 1939. Section 11317 specifically provided: "The petition for that purpose shall be verified." However, Rule 1 (d) of the Rules of Civil Procedure, adopted by this court pursuant to chapter 311, Acts of the Forty-ninth General Assembly, provides:

"After these Rules take effect courts and litigation shall

no longer be governed by the statutes listed in column 1 of the Table appended to these Rules as Appendix I, and the practice and procedure shall no longer be in accordance therewith.''

In column 1 of said Appendix I are listed sections 11316, 11317, and 11318. Accordingly, our practice and procedure are no longer governed by such statutes. In their stead, we must look to Rules 129, 130, 131, and 134. These rules contain no provision for verification of the application involved herein. There is no merit in the contention that a verification thereof was necessary.

II. It is also contended that the application is fatally defective because it is not supported by the affidavit of some person knowing the facts. Reliance is had upon Rules 68, 69, 109, and 80 of the Rules of Civil Procedure. Rule 68 provides:

''The pleadings shall be: petition, answer, and such counter-claim, reply, amendment, cross-petition or petition of intervention, as these Rules allow.''

Rule 69 provides:

'' 'Pleadings' as used in this Division, do not include motions. They are the parties' written statements of their respective claims or defenses.''

Rule 109 provides:

''A motion is an application made by any party or interested person for an order. It may contain several objects which grow out of, or are connected with, the action. It is not a 'pleading'.''

Rule 80 provides:

''(a) Pleadings need not be verified. Counsel's signature to every motion or pleading shall be deemed his certificate that there are good grounds for making the claims therein, and that it is not interposed for delay.

''(b) Any motion asserting facts as the basis of the order it seeks, and any pleading seeking interlocutory relief, shall contain affidavit of the person or persons knowing the facts

requisite to such relief. A similar affidavit shall be appended to all petitions which special statutes require to be verified.''

It is contended that, under the foregoing rules, there is a distinction between a pleading and a motion and that, as between the two, an application for the production of books and papers is a motion, not a pleading. We agree with this contention. It is further contended that subparagraph (b) of Rule 80 requires that such an application be supported by affidavit of the person or persons knowing the facts requisite to such relief. This point is also well taken. However, counsel proceed to contend as follows:

''We submit that the application in its entirety was fatally defective. Its lack of verification or support by affidavit, oath or affirmation made it impotent to confer jurisdiction upon the trial court to make any order for the production of any papers or documents.''

We do not agree with this latter contention. It goes too far. In 41 Am. Jur. 483, section 279, it is stated:

''With the object of securing good faith in the averments of a party, modern codes under the reformed system of procedure contain provisions requiring the verification of pleadings. The verification, however, constitutes no part of a pleading, unless it is otherwise contemplated by statute, and is not ordinarily necessary to vest jurisdiction in the courts.''

By analogy, unless the supporting affidavit is clearly made an indispensable part of a pleading or motion, its absence does not deprive the court of jurisdiction to act. We find no provision in the Rules of Civil Procedure which would give that effect to a supporting affidavit. In fact, Rule 116 would indicate otherwise. It provides:

''Evidence to sustain or resist a motion may be by affidavit or in any other form to which the parties agree or the Court directs. The Court may require any affiant to appear for cross-examination.''

A supporting affidavit to a motion is required to secure good

faith. It may also be used as evidence to sustain the motion. But the parties may agree upon or the court may direct some other form of proof. The affidavit is not indispensable to the jurisdiction of the court. Counsel's contention that it is indispensable thereto is without merit.

However, each resistance to the application for the production of books and papers did point out to the court and to opposing counsel that the application was defective because no supporting affidavit was attached thereto. The court should not have ignored the specific requirement of Rule 80 under such circumstances. Accordingly, while we do not agree with the contentions of counsel in their entirety, we do agree that the trial court erred. In view of our holding in Division III, post, the error is such as to warrant and require interference on our part.

III. It is contended that the showing made by Rudeen was insufficient to sustain the order that the court entered. The contention has merit.

Rule 129 (b) provides:

"The Court shall fix the time and place for hearing on the application, and prescribe the manner and form of giving notice to the party from whom production is asked, or to his attorney of record."

And Rule 130 provides:

"The Court may order the production or inspection of such books and documents as, in its discretion, it deems material to a just determination of the cause, and on any terms or conditions it deems suitable to protect the documents, their owner, or any other person."

As previously pointed out, Rule 80 (b) provides that a "motion asserting facts as the basis of the order it seeks * * * shall contain affidavit of the person or persons knowing the facts requisite to such relief," and Rule 116, above quoted, prescribes the proof to sustain a motion. These rules clearly demonstrate that, for the court to sustain a motion for the production of books and papers, there must be some evidence, by affidavit or otherwise, to sustain a finding that the requisite facts exist

which warrant the entry of the order of the court. No such evidence was introduced herein.

As heretofore stated, Rudeen's application contained no supporting affidavit. The resistance of each of the Chandlers was verified and stated under oath that neither of the Chandlers had any documentary evidence under his control that would show that either had any interest in the business operated by Fred Chandler. Respondent's return does not recite that Rudeen made any proof to support his application. The recital in the return, ''The motion so far as pertaining to the other two said defendants was fully argued and taken under advisement by the court,'' would seem to indicate that there was none.

In Main v. Ring, 219 Iowa 1270, 1275, 260 N. W. 859, 862, we stated as follows:

''The presumption should be that the court acted within its proper jurisdiction. The verified petition for the production of the documents alleges they are material, and the particular facts which will be shown thereby, and there is no countershowing. A petition which is verified is equivalent to an affidavit. The resistance in this case was not verified. Moreover, it does not deny that the papers will show what the petitioner claims for them. Under this situation, the facts well pleaded in the petition for the rule must be accepted as true.''

In the case of National Clay Prod. Co. v. District Court, 214 Iowa 960, 970, 243 N. W. 727, 732, the defendant Keeler made affidavit that the documents under his control were not relevant to the controversy, and we stated:

''His affidavit is to be accepted in the first instance as sufficient proof of irrelevancy. If disputed he may, on proper application to the district court, be required to appear for cross-examination, and the court in case of dispute will have the ultimate determination of the question of relevancy.''

Here the only affidavits before the court were those of the defendants to the effect that they had no documents under their control that related to the disputed question of the interests of defendants in the Chandler business. Such being the record, the court had no evidence before it to sustain the motion and

acted illegally in entering the order complained of. Accordingly, the writs of certiorari herein must be sustained. Dunlop v. District Court, 214 Iowa 389, 239 N. W. 541.

IV. Upon a remand of the case, it may be that Rudeen will be able to furnish satisfactory proof of some of the allegations in his application for the production of books and papers. Accordingly, we will consider some of the other questions now submitted to us.

It is contended that the application of Rudeen was defective because it failed to state with reasonable particularity the papers or books called for, that they are material to a just determination of the cause, and are under the control of the party from whom production is requested; that the application is a palpable fishing expedition, and the order was in excess of the jurisdiction of the court. There is merit in some of these contentions; in others there is not.

Reliance is had on the provisions of Rule 129, to wit:

"The application shall state with reasonable particularity the papers or books which are called for, and state wherein they are material to a just determination of the cause, and state that they are under the control of the party from whom production is requested."

While Rules 129 and 130 differ somewhat from sections 11316 and 11317, Code, 1939, the variations are not sufficient to materially affect certain fundamental principles heretofore adhered to by us. In the recent case of Hampton Clinic v. District Court, 231 Iowa 65, 68, 300 N. W. 646, 648, we point out that "The statutes providing for the production of books and papers are remedial and should be liberally exercised," relying upon Travelers Ins. Co. v. Jackson, 201 Iowa 43, 46, 206 N. W. 98, 99, wherein we stated: "We have given a broad and liberal interpretation to that statute [section 11316]." In Main v. Ring, supra, 219 Iowa 1270, 1280, 260 N. W. 859, 865, we stated that, in such cases, "a broad and liberal construction of the pleadings must be adopted." In Davis v. District Court, 195 Iowa 688, 693, 192 N. W. 852, 854, we stated:

"It is not always easy for the petitioner to specify with

absolute precision the papers or documents desired, and some latitude must necessarily be allowed where this is true."

These principles have been applied by the federal courts to Rule 34 of the Federal Rules of Civil Procedure, which is similar to our Rule 129. See annotations in 28 U. S. C. A., following section 723c.

We have also held repeatedly that an application for the production of books and papers must be limited to documents that are material to the determination of the issues before the court; it cannot be used for a fishing excursion, to rifle an adversary's files, to discover evidence adverse to that of the applicant, or to expose the private affairs of a litigant not relevant to the controversy at hand. Main v. Ring, supra, 219 Iowa 1270, 1277, 260 N. W. 859; Fairbanks Morse & Co. v. District Court, 215 Iowa 703, 707, 247 N. W. 203; Dunlop v. District Court, supra, 214 Iowa 389, 393, 239 N. W. 541; National Clay Prod. Co. v. District Court, supra, 214 Iowa 960, 969, 243 N. W. 727; Travelers Ins. Co. v. Jackson, supra, 201 Iowa 43, 47, 206 N. W. 98; Davis v. District Court, supra, 195 Iowa 688, 693, 192 N. W. 852; Grand Lodge A. O. U. W. v. Webster County Dist. Ct., 150 Iowa 398, 402, 130 N. W. 117. These principles have likewise been applied by the federal courts to Federal Rule 34. See annotations in 28 U. S. C. A., following section 723c.

In Main v. Ring, supra, 219 Iowa 1270, 1277, 260 N. W. 859, 863, we stated as follows:

"The statute is clearly designed to help a party to a suit to discover material facts even though the documents evidencing such facts are in the possession of the adverse party, and it is a wholesome aid to the proper administration of justice. It cannot, however, be used as a means of rifling an adversary's files to find out what evidence or information he has collected and what preparation he has made for the trial. Such a use of the process has been repeatedly condemned by this court. Grand Lodge, A. O. U. W. v. District Court, 150 Iowa 398, 130 N. W. 117."

In National Clay Prod. Co. v. District Court, supra, 214 Iowa 960, 969, 243 N. W. 727, 732, we stated as follows:

"A party may not be required to expose to his adversary, or the public, his private business affairs which have no relation to the matters in litigation. A party is entitled only to seek evidence which is material to his own case, not to pry into or to discover the case of his adversary. He is not entitled to a roving commission to ransack his adversary's books, papers or evidence, or to embark upon a mere fishing expedition or exploratory enterprise. Grand Lodge A. O. U. W. v. District Court, 150 Iowa 398; Davis v. District Court, 195 Iowa 688; Dunlop v. District Court, 214 Iowa 389."

Applying the foregoing principles to the record herein and giving a broad and liberal interpretation to Rule 129 and to Rudeen's application, it is apparent that the books and papers sought are contended to be material to the proof of the liability of the defendants to plaintiff and participation by all three in the profits of the business, which facts the answering defendants expressly deny and Rudeen, in his reply, specifically asserts. The application is limited to such documents as are under the control of the answering defendants. The designation of the documents is as specific as that approved by us in Fairbanks Morse & Co. v. District Court, supra, 215 Iowa 703, 247 N. W. 203, where a vast amount of books and papers were ordered produced because material to the claim of existence of a joint enterprise.

However, as in the Fairbanks Morse case, the application is too broad and should be limited along the lines there designated by us. In that case we stated, 215 Iowa 703, 707, 247 N. W. 203, 206, as follows:

"If the petition asks for the production of matters which are not material, and the court grants the order for their production, the court exceeds its jurisdiction and acts illegally as to such immaterial matters, even though the petition might legally be granted as to other material matters which it asked to be produced."

Applying the foregoing pronouncement to the record therein, we stated, 215 Iowa 703, 713, 714, 247 N. W. 203, 208, as follows:

"The documentary evidence which the plaintiff would have the right to have produced to prove this portion of his petition would be, therefore, such only as is material and tends to prove the existence and scope of such joint adventure."

And so it is in this case. The documentary evidence which Rudeen would have a right to have produced would be such as is material to and tends to prove the liability of defendants to plaintiff and the participation by Howard and Fred Mitchell Chandler in the profits of the business. In view of the fact that there is no such proof now before us, we cannot designate those that should be produced and those that should not be required. All that we can now say is that, there being no proof of the facts necessary to sustain the application, it was error to require the production of any of them.

By reason of the foregoing, the writs of certiorari were properly issued and are sustained.—Writs sustained.

SMITH, C. J., and OLIVER, HALE, BLISS, GARFIELD, MANTZ, and MULRONEY, JJ., concur.