John Leo COLEMAN, Appellant,

v.

Howard M. HALL, Edna V. Hall and Central National Bank & Trust Company, Executors of the Estate of Howard M. Hall, Deceased, Appellees.

Treasa COLEMAN, Appellant,

v.

Howard M. HALL, Edna V. Hall and Central National Bank & Trust Company, Executors of the Estate of Howard M. Hall, Deceased, Appellees.

Gene L. NEEDLES, Administrator of the Estate of Thomas Joseph Coleman, Deceased, Appellant,

v.

Howard M. HALL, Edna V. Hall and Central National Bank & Trust Company, Executors of the Estate of Howard M. Hall, Deceased, Appellees.

No. 52984.

Supreme Court of Iowa.

Sept. 17, 1968.

Theodore T. Duffield, Des Moines, for appellants.

John Paul Jones, Des Moines, for appellees.

STUART, Justice.

Plaintiffs sought damages for injuries to John Coleman and Treasa Coleman and for the wrongful death of Thomas Coleman which occurred in an apartment house fire. Their separate actions against Howard Hall, owner, and Giles and Helena Hulse, tenants, were consolidated for trial. It is alleged the fire was started by Giles Hulse's cigarette. The claims against Hall were based on allegedly defective conditions in the apartment building. The trial court directed a verdict in favor of Hall. As the appeal involves only the cause of action against Hall, he will be referred to as defendant. Plaintiffs claim the court erred: (1) in sustaining specified paragraphs of defendant's motion in limine; (2) in sustaining defendant's motion to strike certain specifications of negligence; (3) in sustaining defendant's motion for a directed verdict.

I. The trial court's ruling on defendant's motion in limine prevented plaintiffs from offering any evidence or making any reference to specifications of negligence based on sections 413.38, 413.39 and 413.40, Code of Iowa. These statutes were enacted after the apartment building was constructed and relate to safety requirements for stairways and halls "hereafter erected".

On this appeal plaintiffs state their position as follows: "It is not the claim of plaintiffs that failure to comply with these statutes is negligence per se, because they were not by their provisions retroactive statutes. It is the claim of plaintiffs, however, that the jury has a right to know what is presently required by the law of the State of Iowa in this regard for the purpose of making an informed judgment as to what acceptable standards are."

In support of their position plaintiffs cite two cases from the U.S. Court of Appeals, District of Columbia Circuit. In Edmonds, Inc. v. Vojka, 118 U.S.App.D.C. 109, 332 F.2d 309 (1964), evidence of a nonretroactive building code formulated long after the building in question was erected was admitted. The court said: "We think the evidence was admissible as relevant to the degree of care required; but to avoid jury confusion the court should itself have made clear that nonconformance with the standards of the code was not evidence of code violation." 332 F.2d at 311.

The same court reached the same conclusion in Curtis v. District of Columbia, 124 U.S.App.D.C. 241, 363 F.2d 973 (1966), from which Judge Prettyman dissented.

This apartment was constructed in 1918. It does not comply with sections 413.38, 413.39 and 413.40. The legislature specifically excluded existing buildings from their requirements. If we permitted the jury to consider present day statutory requirements as bearing upon an owner's common law standards of due care, we would in effect be requiring him to reconstruct and remodel his building to meet changing safety standards, which the legislature refused to do.

We concur in the reasoning of Judge Prettyman's dissent and the opinion of the New Jersey Court in Ellis v. Caprice, 96 N.J.Super. 539, 233 A.2d 654, 661–662, where the court said:

"Plaintiffs urge that even if this section of the statute was inapplicable, it was nevertheless admissible to show recognized standards of construction. We disagree. A statute which establishes a standard of conduct may be considered as evidence of negligence on behalf of one for whose benefit it was enacted if its breach was the efficient cause of the injury of which he complains. [Citations.] Since the statute was inapplicable to defendant's building, it was not admissible for this purpose. Further, in the circumstances of the case, any

probative value it possessed would have been more than offset by the possibility of prejudice arising from its submission to the jury." See also Kaylor v. Magill, 6 Cir., 181 F.2d 179, 181. The trial court was correct in sustaining defendant's motion in limine relating to evidence of sections 413.38, 413.39 and 413.40.

II. The trial court also refused to permit evidence of or reference to section 413.81 of the Iowa Housing Law which states in part: "The owner of every multiple dwelling on which there are fire escapes shall keep them in good order and repair, and whenever rusty shall have them properly painted with two coats of paint."

In sustaining the part of the motion in limine which relates to 413.81, the trial court stated: " * * * defendant's affidavit which supports said motion recites that the structure is not equipped with any fire escape, and no counter-affidavit has been filed by plaintiffs". Plaintiffs contend this section was intended to apply not only to fire escapes in their most technical meaning but to that designated a stairway by the owner rather than a fire escape.

█ For several reasons we are unable to agree with plaintiffs' interpretation of section 413.81. The wording of the statute limits fire escape to something on the building made of iron. If it intended to include stairways as well as fire escapes, the legislature would have used "egress" as in section 413.36 or "exit" as defined in section 103.2 of the chapter on fire escapes and other means of escape from fire. The requirements for stairs and halls are found in sections 413.38, 413.39 and 413.40.

█ In any event, defendant's affidavit stated there were "no separate fire escapes installed or a part of the structure, other than the front and back stairways". This was unchallenged. If plaintiffs believed the back stairway to be a fire excape rather than a stairway, they should have resisted the motion on this factual issue. Failure to assert this argument in the form

of a counter affidavit or offer evidence to this effect leaves plaintiffs with no ground to quarrel with the court's ruling. R.C.P. 80(b) and 116; Chandler v. Taylor, 234 Iowa 287, 295–296, 12 N.W.2d 590, 595.

■ III. Plaintiffs claim the trial court erred in sustaining defendant's motion to strike the specifications of negligence which allege failure to provide the apartment building with reasonably proper fire warning devices, reasonably proper fire control equipment, and self-closing doors for the apartments to prevent the escape of smoke and fire into the hallway. In their appeal, plaintiffs chose to argue only the last of the three aforementioned subparagraphs. We consider the other two waived.

It is contended the landlord owed a common law duty to the tenants to guard against fire hazards by providing self-closing doors on the apartments. Defendant concedes Iowa precedents have required a landlord to exercise reasonable care to maintain those portions of the premises over which he retains control in reasonably safe condition. Stupka v. Scheidel, 244 Iowa, 442, 448, 56 N.W.2d 874, 877; Primus v. Bellevue Apartments, 241 Iowa 1055, 1060, 44 N.W.2d 347, 350, 25 A.L.R. 2d 565; and citations.

We do not believe this standard of care imposes a common law duty on a landlord to maintain self-closing doors in apartment houses. No cases have been cited so holding.

IV. The trial court eliminated all specifications of negligence before trial except: "A. In failing to provide the apartment building with reasonably proper escape routes and apparatus." and "M. In failing to keep a light burning in the hallway as required by section 413.60, Code of Iowa." Plaintiffs do not claim there was evidence to support "M". Therefore, if the trial court erred in directing a verdict it is because there was substantial evidence to support "A".

On appeal plaintiffs rely on sections 103.1 and 103.3, Code of Iowa, claiming they create a duty on defendant to equip the building with a means of escape from fire by a fire escape or second stairway and that the back stairway was so defective he failed to properly discharge this statutory duty.

■ Defendant claims the petition contained no specifications of negligence predicated upon a failure to comply with the provisions of said sections. It is true there was no reference in the petition to sections 103.1 and 103.3, however, we believe specification "A" was broad enough to cover such claim. We take judicial notice of applicable Iowa statutes and the petition need not refer to the code section by number. R.C.P. 94; State ex rel. LeBuhn v. White, 257 Iowa 606, 608, 133 N.W.2d 903, 904. As the petition was not directly attacked, it will be liberally construed in order to effectuate justice and the pleader will be accorded the advantage of every reasonable intendment. Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 443–444.

Section 103.1 provides: "Every church, school, hotel, theater, amphitheater, asylum, hospital, nursing home, college or university building, lodge hall, club room, public meeting place, and all other structures in which persons congregate from time to time, whether publicly or privately owned, shall have at least two means of exit from each story. All such buildings shall be equipped with such protection from fire, and means of escape therefrom, as in this chapter provided.

"After the thirty-first day of December, 1957, every such new or remodeled building, except private one- or two-family dwellings and farm buildings, shall have at least two means of exit from each story and shall be equipped with such protection from fire, and means of escape therefrom, as in this chapter provided."

The apartment building in the instant case is not covered in 103.1 since it does

not fall within the types of structures mentioned in the first paragraph and was built in 1918 before the effective date specified in the second paragraph.

■ However, section 103.3 Code of Iowa was amended in 1957 to read as follows:

"In addition to the requirements of section 103.1, every building coming under the provisions of this chapter shall have at least the number of exits of the kind prescribed by law and is determined by the following formula: * * *. *Nothing in this chapter shall be construed to permit less than two exits from each story of every building except private one- or two-family dwellings and farm buildings.* When the result of said formula is two or less than two, the number of exits shall be two. * * *."

In our opinion, the underlined portion of section 103.3 requires two exits from each floor in all buildings except private homes or duplexes and farm buildings. The apartment here must meet that minimum requirement.

Sections 103.1 and 103.3 as written prior to the 1957 amendment required this apartment to have two exits. It is doubtful that the legislature intended to remove such structure from the statutory safety requirements.

Defendant argues that "building" applies only to those structures specified in 103.1. Section 103.2 defines building as "all structures or inclosures of each of the classes mentioned or referred to herein". This definition was not changed in 1957 when 103.1 was amended to first list certain buildings. As no "classes" are mentioned in 103.2 "herein" must refer to the whole chapter, not just those specified in 103.1. If the meaning of building were limited to such specified buildings, there would have been no need to except homes or duplexes and farm buildings as they certainly were not covered in the list.

We therefore hold that the apartment building here was required under chapter 103.3 to provide two exits from each floor.

■ V. The question then remains whether the back stairway was in fact in such condition that it met this minimum requirement. As this was a directed verdict, we will examine the evidence in the light most favorable to plaintiffs.

■ On the early morning of April 28, 1962, a fire started in apartment 3 on the second floor of the apartment building owned by Hall. Discovering their apartment on fire, the Hulses ran from the building leaving the door open to the common hallway pausing on the 2nd floor to yell "fire" and on the 1st floor to ask another tenant to phone the fire department.

Plaintiff John Coleman was awakened by the smoke and fumes and called out to his mother Treasa Coleman and his brother Thomas Coleman. He testified: "I had looked over to the west window and there were flames on the south side leaping up beyond the windowsill. That is looking from the living room. I then went part way into the dining room and my mother came towards me out of the doorway of her bedroom and my brother came towards me also. My mother then went back to her bedroom and got a wool winter coat, and she also had shoes on. She then came back out of the bedroom the second time. The three of us joined hands. I was first, my mother was in the middle and my brother on the end. I directed the remainder of the group as to how we were going to proceed to try to leave the building."

There were two possible exit routes from plaintiffs' third floor apartment. The back stair which was a curving wooden stair giving each of the six apartments an exit through the kitchen and the common stairwell hallway which had four foot wide cement stairs providing all six apartments with front entrances.

John Coleman's testimony continued: "I decided to go down the front entrance

* * * because the front stairway was concrete * * * [and] * * * the back stairs were not suitable as an egress."

"To me the back stairwell, the north one was not suitable as a means of egress in this situation because of a broken or dislodged step, because of this spiral stairway which my mother was just not physically equipped to take, because the handrail was loose * * *

"There was no light on the landing on the back stairway at the time I went to sleep and there was none that I could turn on. The only light that I could get back there would be by turning on the light in the kitchen, and then it would penetrate the door, the glass insert in the kitchen door. To my knowledge, there was no light as such in that stairwell."

Mrs. Treasa Coleman, who had worked as a registered nurse, was disabled from work at the time of the fire because of an injury to one of her legs and it was for this reason her sons John and Thomas were living with her.

John testified as to the ordeal that followed: "When I opened the door and commenced going down the front steps, there was smoke and you could not see well. I was in the lead. I got down to this landing between the third and second levels, this little landing that the apartment doors are on. There was a window there at this halfway mark. It was open and I stuck my head out and took a good deep breath. At this time, to my knowledge, I had a hold of my mother. I could not see my brother. He was with me when we went out the apartment door.

"After I took a deep breath, I shut my mouth and continued on. I recall dragging and bumping because I did not let go. I saw the outline of the wooden handrail on the stairs down which we were going outlined with flames, and also the spokes that supported the handrail. Those are the two things I remember, the flames dancing along the wooden banister, and there were also flames on the bottom underneath my feet, and I was dragging my mother. I blacked out after that, and the next I recall I was outside."

John and Treasa Coleman suffered severe burns while descending the stairs to the front door. Thomas Coleman did not make it out of the building and was later found dead inside the door of the apartment where the fire originated.

On cross-examination, John stated: "I noticed the step I have described as defective a couple of days before the fire and I don't know how long it had been that way. It was not that way when I had last used them the time before which could have been a week before that."

Mr. Gene Needles, Mrs. Coleman's son-in-law, testified as to his inspection of the back stairs the morning after the fire.

"Q. Did you in the course of going part way down and coming back up have a chance to observe whether or not there were any loose or dislodged stair steps? A. Yes, I did.

"Q. What is the fact as to whether or not there were? A. There was a stair step dislodged from the building."

On cross-examination Mr. Needles stated: "I had never traversed these steps prior to the time of the fire. It could have been dislodged in connection with the fighting of the fire. It was dislodged at the outer edge. The inner edge was still fastened so that the step hadn't fallen out."

Mrs. Coleman indicated she did not use the back stairs too often because they were winding.

Although the evidence as to the condition of the stairway and lighting was contradicted by impartial witnesses, there was evidence from which the jury could have found the stairway was negligently maintained.

VI. Plaintiffs were not damaged by falling on the allegedly defective stairway.

They were damaged because one of them chose to lead all three down the front steps through smoke and flame rather than traverse the back stairway which was not involved in the fire and was available for their use. The causal connection is at best indirect. Is it so remote it is not a proximate cause?

■ "It is a rule too well established to require the citation of authority, that the question of proximate cause is generally for the jury to determine, although the line of demarcation between what is sufficiently proximate and what is too remote is often a thin one. If, upon looking back from the injury, the connection between the negligence and the injury appears unnatural, unreasonable and improbable in light of common experience, such negligence would be a remote rather than a proximate cause. If, however, by a fair consideration of the facts based upon common human experience and logic there is nothing particularly unnatural or unreasonable in connecting the injury with the negligence, a jury question would be created." Chenoweth v. Flynn, 251 Iowa 11, 17–18, 99 N.W.2d 310, 314; Klunenberg v. Rottinghaus, 256 Iowa 731, 737, 129 N.W.2d 68, 71; Christianson v. Kramer, 255 Iowa 239, 250, 122 N.W.2d 283.

Defendant argues the instant case is an exceptional case under R.C.P. 344(f) (10) and assuming, without conceding, that appellants' strongly disputed claim of a defective back stair is true, as a matter of law, this could not be a proximate cause of plaintiffs' injuries. He states: "With two maximally remote means of ingress and egress, appellants' unfortunate choice of a periolous, flame and smoke engulfed route for departure, rather than a route remote from and untouched by the fire, surely cannot be said to be such probable or natural consequence as could reasonably have been anticipated, apprehended or foreseen by the owner of the premises. Rather, it is so remote and unrelated to the source of the original negligence, both geographically and causally, that any connection between the alleged negligence of the owner and appellants' injuries appears unnatural, unreasonable and improbable in the light of common experience."

" * * * the *true doctrine*, * * * is that it is not necessary to a defendant's liability that the consequences of his negligence should have been foreseen. It is sufficient if the injuries are the *natural*, though not the necessary or inevitable, result of the wrong." Cowman v. Hansen, 250 Iowa 358, 366, 92 N.W.2d 682, 686.

"[I]n negligence actions the proximate cause of an injury must be determined as a question of fact by the jury except where the facts are undisputed and are susceptible of only one inference." Noble v. Edberg, 250 Iowa 1331, 1335–1336, 98 N.W.2d 741, 744. In giving plaintiffs' evidence the "most favorable construction it will reasonably bear" R.C.P. 344(f) (2), we are not persuaded that John Coleman's testimony as to his reasons for choosing the front cement stair exit in light of his mother's physical condition and his belief that she could not exit by way of the defective back stair, could not have been a proximate cause as a matter of law.

■ There is testimony the step was so defective it would not bear weight and that it was not sufficiently illuminated. John Coleman testified these conditions together with his mother's physical condition caused him to choose to risk the fire and smoke in the front stairway. If the jury found such conditions existed, it could also find they were the basis for John Coleman's decision, therefore such conditions could be a proximate cause of the injuries sustained.

Reversed and remanded.

All Justices concur.