Bruce E. BARKS, Conservator for Celesta F. Keech, Plaintiff-Appellee,

v.

Donald E. WHITE and Marjorie A. White, Defendants-Appellants,

and

Allen R. Veeder, Defendant.

No. 83–1068.

Court of Appeals of Iowa.

Jan. 29, 1985.

Phil Watson and Robert L. White of Watson, White & Peterson, P.C., Des Moines, for defendants-appellants.

C. Joseph Coleman, Jr., of Mitchell, Coleman, Perkins & Enke, P.C., Fort Dodge, for plaintiff-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

SACKETT, Judge.

Defendants Donald E. and Marjorie A. White appeal from a judgment quieting title to a 40-acre tract in Wright County in Celesta F. Keech against all claims of Donald E. and Marjorie A. White and Allen R. Veeders and setting aside a real estate contract wherein Keech was purchasing said land from the Whites. Veeder has not appealed.[1]

The cause had been consolidated for trial with a mortgage foreclosure action on the

---

1. Allen R. Veeder discharged in bankruptcy any debts he owed Keech.

property in question in which the South Des Moines National Bank was plaintiff. The bank dismissed their appeal.

Celesta F. Keech owned a 40 acre tract in Wright County. Keech's son, defendant Allen R. Veeder, arranged through defendant Donald White, a Des Moines area realtor, to purchase on contract a cocktail lounge on Park Avenue in Des Moines from a person named Skoog. The purchase price was $155,000 and the contract required a down payment of $50,000 with the balance payable in monthly payments with an ultimate balloon payment.

Apparently Keech was to help Veeder finance his purchase. There was an original contact with the Eagle Grove State Bank for a loan. When the Eagle Grove Bank did not loan the requested $60,000, Donald White offered his assistance in obtaining the financing and devised a plan whereby he would purchase the 40 acre tract in Wright County from Keech for $60,000. Then, using the 40 acres as collateral, he would obtain a loan of $60,000 in his name from the South Des Moines Bank where he was a customer. The $60,000 would go to Veeder to make the down payment on the Park Avenue property and White would in turn sell the 40 acres back to Keech on an installment contract for $60,000 with interest at 9% per annum.

Keech did in fact execute a warranty deed to the property to White. White obtained the loan and the money went to Veeder. Veeder made the required down payment on the Park Avenue property and used the balance of the proceeds for business related expense. Keech received no money in the transaction.

While the parties basically agree with the foregoing facts, the nature of the conversations and agreement at the time of the transaction are in dispute. Veeder and Keech testified that White promised Keech that there was no possible way she would lose her farm. White told her that Veeder had purchased the bar for $155,000 when it actually was worth $230,000, and that because Veeder had gotten into the bar so cheaply, he, White, could sell it for Veeder

at any time and pay off the farm contract. White testified he told Keech she would lose her farm if she didn't make the payments and she told him, White, she would sell it first.

The Park Avenue Bar was not successful. Within a year Veeder was unable to make the payments. Skoog attempted to forfeit Veeder's contract and Veeder and Skoog in January of 1978 sold the Park Avenue property to White for Veeder's contract balance of approximately $100,-000.

A warranty deed was then issued from Skoog to White.

In February of 1978 the building was insured for $90,000 and the equipment for $10,000.

White then evicted Veeder from the property and leased the building to one Woodard. The lease commenced in January of 1979 and gave Woodard an option to purchase the property for $225,000 cash until March 1, 1980.

In August of 1979, a fire of unknown origin damaged the building. White filed a proof of loss showing his damage to be in the amount of $90,000 and ultimately received $57,000 from his insurance company for the loss.

No payments were made to the Whites on the Wright County contract; the Whites served Keech with a notice of forfeiture. Keech through a conservator subsequently commenced this action.

The matter was tried to the court who found: "Title should be quieted in Keech for reason that she was not to lose her farmland based on White's promise to first pay off the loan to the bank by selling the business property; that the Whites still retain the business real estate and received fire insurance proceeds for the improvement loss; the purpose of Keech's involvement in the scheme was to permit White to have sufficient assets to obtain a loan for Veeder's business venture, which involved a real estate commission to White; and the bank was not a bona fide purchaser." The trial court made no finding of fraud or

undue influence but found that White had breached his promise. The Whites have appealed.

## I. Scope of Review

Actions for quiet title lie in equity. As such, our review is de novo. Iowa R.App.P. 4, 14(f)(7). When an action is tried to the district court in equity we review the record de novo. *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 886 (Iowa 1981); *Grosvenor v. Olson*, 199 N.W.2d 50, 51 (Iowa 1972).

## II. Discovery Sanctions

White contends that Keech violated the discovery rules and should have been prohibited from introducing into evidence certain exhibits. White also contends Keech should have been required to pay costs and attorney fees for disobedience of discovery orders. White filed a Request to Produce which contained the following request:

"2. Each document, including writings, drawings, graphs, charts, photographs and other data compilations, which you intend to introduce in support of your claim against Defendants, Donald E. and Marjorie A. White."

No objection was filed to the request and Keech's attorney filed a production which provided in part as follows:

"... and hereby produces all documents contained in the file of the attorney for the Plaintiff ..."

At trial Keech sought to introduce twenty-six exhibits which had not been produced in response to the production request. White objected to their introduction on the grounds that they had not been produced in response to his request. The exhibits were admitted. White contends the exhibits should not have been admitted. Keech counters that they were properly introduced because despite the fact that they were not produced in response to the request they were documents which had come from the files of White and his attorney. The fact is that the questioned exhibits were obtained from White or his attorney and included documents incident to White's loan application on the 40 acres, offers originating from White Realty on the purchase and lease of the Park Avenue property. Most of the documents bore White's signature or originated under his direction or were directed to him.

Did the trial judge abuse his discretion in allowing their admission into evidence?

"[T]he purpose of modern discovery is to assist the administration of justice, to aid a party in preparing and presenting his case or his defense, by enabling a party to narrow and clarify the basic issues between the parties, and to ascertain the facts, or information as to the existence or whereabouts of facts, relative to those issues. The discovery rules simply advance the state at which disclosure can be compelled from the time and the need to conduct a trial in the dark or blindly. Discovery should expedite the disposition of the litigation, by educating the parties in advance of trial of the real value of their claims and defenses, which may encourage settlements, and assure that judgments rest upon the real merits of causes and not upon the skill and maneuvering of counsel although it has been recognized that under certain circumstances liberal discovery provisions can be abused."

23 Am.Jur.2d Depositions and Discovery P. 334–335.

Discovery is designed to enable preparation for trial, as well as to aid in development of proof. *Pollock v. Deere and Co.*, 282 N.W.2d 735, 738 (Iowa 1979); *Allen v. Lindeman*, 259 Ia. 1384, 1395, 148 N.W.2d 610, 617 (1967). The very purpose of the modern rule allowing prior discovery is to learn the facts so that the court can apply the appropriate substantive rule of law. *Carter v. Jernigan*, 227 N.W.2d 131, 136 (Iowa 1975). Discovery rules are to be liberally construed to effectuate the disclosure of relevant information to the parties. *Farnum v. C.D. Searle & Co.*, 339 N.W.2d 384, 389 (Iowa 1983). It is no objection to interrogatories that the information sought is within the knowledge of the interrogating party. A distinction should not be

drawn between facts with or without the knowledge of the examining party. *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (1975). Where plaintiff objected to answering an interrogatory on the ground that the information sought was primarily within the knowledge and control of the defendant, the court ordered the plaintiff to answer finding that most jurisdictions have discarded the old rule holding that inquiry was not proper as to facts within the discoverer's knowledge or facts of general public knowledge. *See Vernay Laboratories, Inc. v. Industrial Electronic Rubber Co.*, 234 F.Supp. 161, 166 (1964).

■ The sole fact that White had knowledge of the material in question does not relieve Keech from providing it in response to a proper request and, while the failure to supply requested material may have been sufficient grounds for imposing sanctions, we do not find that the trial court abused its discretion in failing to exclude the evidence. *See Miller v. Bonar*, 337 N.W.2d 523, 527 (Iowa 1983).

■ Trial courts have inherent power to enforce discovery rules and have discretion to impose sanctions for a litigant's failure to obey them. *White v. Citizens Nat. Bank of Boone*, 262 N.W.2d 812, 816 (Iowa 1978). The imposition of discovery sanctions by a trial court is discretionary and will not be reversed unless there has been an abuse of discretion. The supreme court has been slow to find an abuse of discretion and usually has found an abuse only in cases involving dismissal. *Sullivan v. Chicago & Northwestern Transp.*, 326 N.W.2d 320, 324 (Iowa 1982).

■ White has also requested that Keech pay reasonable expenses including trial and appellate attorney fees because of her failure to promptly respond to discovery request. White has filed with us an itemized list of attorney fees for charges incurred in discovery. The billing was never presented to the trial court and despite the fact there appears to be some delay on the part of Keech in responding to discovery request, the issue was not presented to the trial court and will not be considered for the first time on appeal.

## III. Verification

White contends that Keech's petition should be dismissed because it was not verified as provided in the Iowa Code § 649.2, which provides with reference to a petition for quiet title:

"The petition therefor must be under oath; ..."

The petition filed by Keech was not verified. White in his answer alleged as follows:

"9. Defendants further state that said petition is clearly not under oath as required by Chapter 649.2, the Code, and is therefore fatally defective and must be dismissed."

The matter was referred to in White's brief in support of their motion to strike. The issue was again raised at the close of plaintiff's evidence by a motion to dismiss based on failure to verify. The trial court overruled the motion to dismiss based on failure to verify. Keech contends that the trial court was correct in overruling White's motion for lack of verification after trial had been completed without objection to the petition and after the ward and conservator had testified under oath. Keech's contention is incorrect because White did in fact raise the issue in his answer and Keech made no effort at any time to correct the defect.

*Schnor v. Schnor*, 235 Iowa 720, 722, 17 N.W.2d 375, 376 (Iowa 1945), held the failure to verify a divorce petition did not deprive the court of jurisdiction where appellant filed an answer, went to trial and did not object to lack of verification. In *Schnor* the court said the appellant hardly was in a position to complain about verification on appeal particularly where appellee had testified as a witness under oath in support of the allegations of the petition.

Unlike the appellant in *Schnor*, White raised the objection in their answer and in a motion to dismiss. However, as in *Schnor*, Keech supported the allegations of her petition by sworn testimony at trial and no objection was made to said testimony. White cites *Chandler v. Taylor*, 234 Iowa 287, 295–96, 12 N.W.2d 590, 596 (Iowa 1944) as support for their position that the action should be dismissed. We disagree. The court in *Chandler* found error where the trial court ignored RCP 80(b) requiring a motion asserting facts as a basis for the order it seeks to contain an affidavit of the person with knowledge of the facts. The ruling hinged upon the court's determination that absent the affidavit the court had no evidence before it to sustain the motion.

■ In the instant case the trial court had sworn testimony in support of the petition. The testimony came in without objection and supported the allegations of the unverified petition. The trial judge was correct in overruling the motion to dismiss plaintiff's petition for failure to verify the petition as required by Iowa Code 649.2.

### IV. Trial Court's Findings

White contends that the record fails to support the trial court's findings. We disagree. The trial court determined in essence that White had promised to pay off the contract against her farm by selling the business property and that because White now had the business property he should not benefit further from his financing scheme.

We look first at the respective parties.

### Keech

Celesta Keech is of below average intelligence. She is employed as a nurses aide. She had difficulty following directions of any complexity. Her dealings in the real estate area were limited to purchasing and financing her home. She inherited the forty-acre tract in question. She was receiving pressure from her son to assist him in obtaining property.

### White

Don White's profession is selling and appraising real estate. He is experienced in salesmanship and persuasion. He has accumulated a substantial net worth and has had numerous dealings in real estate matters. White wore many hats in his dealings with Keech. He is a salesperson who would earn a $15,000 commission on the sale of the Park Avenue property to Veeder. He was a money broker arranging the financing so that Veeder could purchase the property. He was the lender who arranged to loan money to Keech to give to Veeder. And, finally, he was the party preparing the legal documents for Keech to transfer ownership of her farm. White sought to wear all these hats in his dealings with Keech but never advised nor recommended to her that she seek independent advice or legal counsel in her dealings with him.

The record is very clear that the forty-acre tract (37 acres of which are tillable) will not service a $60,000 loan at 9% interest.

White testified that Keech needed his skills to complete the transaction. White was asked:

Q. Do you think that Mrs. Keech could understand or even read the boiler plate language of these documents. A. No, I don't think she could.

By his entry into the transaction he shielded Keech from the advice of another lender. The farm would not support the service on a $60,000 debt. The alleged financing scheme devised by White put Keech in a position of losing her farm in 30 days for nonpayment, while White's lending agreement from the bank afforded him the protections of foreclosure and redemption.

White then got into a property for $100,000 that he had sold 12 months earlier for $155,000. The building and properties included two lots and a part of a third. Shortly after purchase, White was able to obtain insurance on the building alone for $90,000.

White now asks us to reject Keech's testimony that White promised her the farm encumbrance would be paid from the Park Avenue property. We refuse to do so. On our de novo review we find the record clearly supports the trial court's finding and that White promised the encumbrance on the Keech farm would be paid from the Park Avenue property and that he has recovered the $60,000 he advanced to Keech from the Park Avenue property. The judgment of the trial court is affirmed and title of the property is quieted in Keech.

We need not address the other issues raised on appeal.

AFFIRMED.